GEARHART LAW, LLC
Richard Gearhart, NJ Bar No.: 022742006
Sergei Orel, NJ Bar No.: 008862001
41 River Road,
Summit, NJ 07901
Tel: (908) 273-0700
rgearhart@gearhartlaw.com
sorel@gearhartlaw.com
Attorneys for Plaintiff
What A Smoke, LLC.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| What A Smoke, LLC,<br><br>               Plaintiff,<br><br>v.<br><br>Duracell US Operations, Inc., aka<br>Duracell U.S. Operations, Inc.,<br>Duracell Inc., Duracell<br>International Inc., and<br>www.duracell.com<br><br>               Defendants. | CIVIL ACTION NO.:<br><br><br>COMPLAINT FOR TRADEMARK<br>INFRINGEMENT, TRADE DRESS<br>INFRINGEMENT, FALSE<br>DESIGNATION OF ORIGIN,<br>UNFAIR COMPETITION AND<br>UNJUST ENRICHMENT |

Plaintiff What A Smoke, LLC ("What A Smoke" or "Plaintiff"), through its attorneys, sues defendant named above and says:

**STATEMENT OF THE CASE**

This is a suit by What A Smoke against Defendants Duracell US Operations, Inc., also known as Duracell U.S. Operations, Inc., and their related and/or parent corporate entities, namely, Duracell Inc., and Duracell International Inc., and

their website (hereinafter collectively and individually referred to as "Duracell" or "Defendants"), for a permanent injunction, damages, treble damages or profits, compensatory damages, punitive damages, pre-judgment interest, attorneys' fees and costs from Defendants for their willful and malicious acts.  Namely, Defendants are being sued by What A Smoke as a result of Defendants' sale, offers for sale, distribution, promotion and advertisement of their batteries under Plaintiff's OPTIMUM trademark, and under a combination of Plaintiff's OPTIMUM trademark and Defendant's DURACELL trademark, i.e., DURACELL OPTIMUM, by unlawfully using What A Smoke's trademark and trade dress.

As set forth below, the unlawful acts of Defendants constitute federal trademark infringement, state common law trademark infringement, fraud on the USPTO, trade dress infringement, unfair competition, unjust enrichment, tortious interference with prospective economic advantage, intentional interference with prospective economic advantage, under Federal and New Jersey common law.

**SUBJECT MATTER JURISDICTION AND VENUE**

**Subject Matter Jurisdiction**

1.    This Court has jurisdiction under 17 U.S.C. §101 et seq.; 28 U.S.C. §1331(federal question); and 28 U.S.C. §1338(a) (trademark). This Court has jurisdiction over claims for trademark infringement under 15 U.S.C § 1121(a), and claims for fraud on the USPTO under 15 U.S.C. §1120, and unfair competition asserted in this action pursuant to 28 U.S.C. § 1338(b).

2.    This Court has supplemental jurisdiction over the claims in the Complaint that arise under the statutory and common law of the State of New Jersey pursuant to 28 U.S.C § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

### Venue

3.    Venue is proper in the Court pursuant to 28 U.S.C. § 1391(b), 28 U.S. Code § 1332 and/or § 1400(a) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District and were directed to this District. Furthermore, venue is proper in New Jersey because the defendant Duracell, a corporation that operates in the State of New Jersey, by virtue of offering its products for sale and by advertising its products in New Jersey to the detriment of the Plaintiffs, and there is no adequate alternative forum to hear the case (Fed. R. Civ. P. 4(k)(2)).

3

## PARTIES AND JURISDICTION

4.    Plaintiff What A Smoke, LLC, is a Limited Liability Company organized and existing under the laws of the State of New Jersey, having an office address and principal place of business at 191 US-206, Suite 4, Flanders, New Jersey 07836. What A Smoke is owned by Mark Anton, who started What A Smoke in the year 2008. What A Smoke has been conducting and conducts business in this District.

5.    Upon information and belief, defendant Duracell US Operations, Inc., aka Duracell U.S. Operations, Inc., a Delaware State corporation, operates in the State of New Jersey by virtue of offering for sale and advertising its goods in the State of New Jersey, i.e., in and directed to this District to the detriment of the Plaintiff.

6.    Defendant Duracell US Operations, Inc., is the current owner of the two infringing USPTO trademark applications Serial Numbers 88/190,116 for OPTIMUM, and 88/190,119 for DURACELL OPTIMUM.

7.    Defendant Duracell committed the acts complained herein that concern and relate to allegations that concern or relate to trademark infringement and other unlawful acts by Duracell.

8.   Duracell has committed the acts complained of herein in this District. Duracell knew its wrongful acts would have a devastating impact upon What A Smoke by interfering with What A Smoke's business and creating confusion, and reverse confusion, in the minds of customers as to the sources of the respective goods sold by Plaintiff and Defendant in this District, thus affecting sales and revenue of What A Smoke, who Duracell knew to be located and operating its business in New Jersey; and Duracell specifically directed actions against What A Smoke and its business in this District by selling and advertising for sale its goods in this District under Plaintiff's OPTIMUM trademark, resulting in substantial irreparable loss of business, in blatant disregard of What A Smoke's trademark ownership and its business in New Jersey and in this District.

9.   Upon information and belief, Defendant owns and controls the website <www.duracell.com> (the "Duracell Website"). Upon information and belief, the Duracell Website has been used to appropriate What A Smoke's OPTIMUM trademark by using What A Smoke's OPTIMUM trademark to advertise similar or identical goods, namely, batteries, to those of What A Smoke on Duracell website, and to advertise, distribute, promote, and offer for sale batteries bearing OPTIMUM and DURACELL OPTIMUM trademarks, which creates confusion in the minds of consumers as

5

to the source of the relevant goods within this District, resulting in loss of income to Plaintiff. See attached Exhibit "A".



10. Upon information and belief, Duracell continues to advertise on the Duracell Website, i.e.,

https://www.duracell.com/en-us/campaign-optimum/, its batteries
in this District by using What A Smoke's OPTIMUM trademark,
i.e., identical trademark to Plaintiff's trademark on goods
identical or similar to those of What A Smoke on the Duracell
Website, and to advertise, distribute, promote, and offer
batteries bearing OPTIMUM and DURACELL OPTIMUM trademarks, which
are confusingly similar to Plaintiff's OPTIMUM trademark,
wherein customers within this District were, have been, and are
continuing to be led to believe that Plaintiff's goods are those
of the Defendant, or vice versa, and to be confused as to the
source of the parties' respective batteries products, resulting
in dilution of Plaintiff's trademark and loss of income to
Plaintiff. See Exhibit "B".

     11.  This Court has personal jurisdiction over Duracell
because it operates in this District through its infringing
activities, said activities being a basis of unfair competition
against What A Smoke because the Defendant knowingly violated
Plaintiff's trademark rights under 15 U.S. Code § 1121(a),
including by committing fraud on the USPTO under 15 U.S. Code §
1120, and committed unfair competition asserted in this action
pursuant to 28 U.S.C. § 1338(b).  Defendant has applied for a
trademark registration of two marks, i.e., OPTIMUM and DURACELL
OPTIMUM, with the USPTO, both are identical and confusingly

                                7

similar to Plaintiff's OPTIMUM trademarks, i.e., rights offered under US Federal law, said applications for the marks that are advertised in respect of sales of goods directed to this District and Defendant Duracell is a primary participant in the alleged action complained of herein regarding trademark infringement. Defendant has purposefully availed itself to US District Courts as it approved and caused the filing of the subject trademark applications knowing they would infringe on Plaintiff's senior trademark rights and would influence the market in this District.

12.   This Court has personal jurisdiction over Defendant because it has sold and continues to sell falsely advertised goods under Plaintiff's trademarks through its company website and other media in this District, and/or in the same streams of commerce as those of Plaintiff, with knowledge that said goods would be sold in this District. Upon information and belief, such advertisements and sales of batteries by Defendant are substantial, continuous, and systematic.

## STATEMENT OF CLAIM

13.   What A Smoke is a leading innovator, manufacturer and marketer of safe e-cigarette products under its OPTIMUM brand, including batteries and electric chargers therefor, and is in

8

the business of bringing safe nicotine delivery device products to the market focusing on the safety of the users of Plaintiff's products. See Exhibits "C1", "C2", and "C3".

14.   What A Smoke owns two (2) trademark registrations with the USPTO for the OPTIMUM brand, namely, Registration Numbers 5,016,639 and 5,016,640, both registered in respect of the following goods: "Power sources, namely, batteries, battery chargers and AC power adapters for electronic cigarettes" in International Class 9 and "Atomizers, tanks, refill cartridges and liquids for electronic cigarettes" in International Class 34.

15.   Duracell's use of the OPTIMUM mark is willful and intentional. Duracell first became aware of What A Smoke's OPTIMUM mark when it filed its own trademark applications for OPTIMUM and DURACELL OPTIMUM trademarks in Class 9 on November 12, 2018, under application serial numbers 88/190,116, and 88/190,119. When filing its trademark applications for its two trademarks in question, Duracell signed a Declaration in each of the two Duracell's trademark applications in question, explicitly stating that "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to

9

be likely, when used on or in connection with the goods/services
of such other persons, to cause confusion or mistake, or to
deceive.  To the best of the signatory's knowledge, information,
and belief, formed after an inquiry reasonable under the
circumstances, the allegations and other factual contentions
made above have evidentiary support.  The signatory being warned
that willful false statements and the like are punishable by
fine or imprisonment, or both, under 18 U.S.C. § 1001, and that
such willful false statements and the like may jeopardize the
validity of the application or submission or any registration
resulting therefrom, declares that all statements made of
his/her own knowledge are true and all statements made on
information and belief are believed to be true.". By way of a
quick and simple trademark search of the USPTO records before
the filing of its two infringing trademark applications Duracell
should have discovered, and undoubtedly it did in fact discover
What A Smoke's two trademark registrations for OPTIMUM in Class
9, yet Duracell submitted a declaration in its trademark
application for an identical OPTIMUM mark to that of
Plaintiff's, to the USPTO, anyway, that it was not aware of any
similar marks out there, or senior trademark rights of others,
on which it could infringe by filing its applications, which can
only be characterized as a willful and intentional misstatement

10

and misrepresentation of facts with blatant disregard of the senior trademark rights of What A Smoke, if not an outright fraud on the USPTO.

16.  Defendant Duracell's infringing use of What A Smoke's OPTIMUM mark is willful and intentional. Duracell was clearly aware of What A Smoke's mark OPTIMUM when it filed trademark applications for the one identical OPTIMUM trademark with the USPTO, i.e., application serial number 88/190,116, and for the other trademark containing Plaintiff's OPTIMUM trademark, which is a combination of What A Smoke's OPTIMUM and DURACELL mark, i.e., DURACELL OPTIMUM, application serial number 88/190,119 on November 12, 2018.  The US Patent and Trademark Office examiner who is in charge of reviewing both of Duracell's trademark applications in question refused to register Duracell's OPTIMUM and DURACELL OPTIMUM marks because the examiner correctly concluded that both Duracell's marks were confusingly similar to What A Smoke's senior OPTIMUM mark. Both Duracell's trademark applications are currently properly rejected by the United States Patent and Trademark Office on the grounds of a likelihood of confusion with What A Smoke's senior OPTIMUM mark.

17.  In response to the USPTO examiner's rejections in Duracell's two infringing trademark applications, Duracell reached out to What A Smoke asking for permission to use OPTIMUM

mark on batteries.  Through What A Smoke's counsel, Duracell counsel was provided with evidence of What A Smoke's prior and senior use of the OPTIMUM marks in commerce for batteries. Discussions to resolve this issue were ongoing when, to Plaintiff's complete and utter shock, and without permission or any communication to Plaintiff whatsoever, Duracell launched its product for batteries using Plaintiff's OPTIMUM mark.

18.  Duracell is currently engaging in an extensive and expensive marketing campaign design to generate millions, if not billions, of dollars of sales revenue to Duracell and a business of Plaintiff's size cannot compete against it. The time, effort and money that Plaintiff has invested in its business is being trampled by Duracell knowingly, willingly, intentionally, and in complete disregard of Plaintiff's senior trademark rights in the mark OPTIMUM in respect of international class 9 goods, including batteries. Duracell began promoting and selling its batteries under Plaintiff's OPTIMUM brand, and also as DURACELL OPTIMUM, all in violation of Plaintiff's senior trademark rights, since about July 15, 2019, to the best of Plaintiff's knowledge, and Duracell continues to do so, to Plaintiff's detriment.

**COUNT I**

**Trademark Infringement (Infringement of Plaintiff's OPTIMUM Trademark Reg. Nos. 5,016,639 and 5,016,640)**

19.   What A Smoke incorporates all above allegations as if set forth completely herein.

20.   What A Smoke is the exclusive owner of US Trademark Registration No. 5,016,639 and 5,016,640 for OPTIMUM in respect of "power sources, namely, batteries, battery chargers and AC power adapters for electronic cigarettes" in International Class 9, and "atomizers, tanks, refill cartridges and liquids for electronic cigarettes" in International Class 34.

21.   Defendant Duracell US Operations, Inc., has copied Plaintiff's trademark and has been selling and advertising for sale their batteries, i.e., the same goods that Plaintiff advertises and sells, in this District, in the same channels of trade, under the identical trademark and is using the identical or very similar color scheme packaging box that contain goods Defendant has sold and continues to sell in US commerce including in this District.

22.   What A Smoke has never authorized Defendant to use its trademark in respect of identical and similar goods to those of the Plaintiff.

23.   Defendants Duracell Inc., and Duracell International, Inc., in their capacity of related and/or parent companies to

the co-defendant Duracell US Operations, Inc., have vicarious
liability for all tortious actions of the co-defendant Duracell
US Operations, Inc., where they tortuously, negligently and
intentionally allowed it to copy Plaintiff's trademark and to
sell and advertise for sale their batteries, i.e., the same
goods that Plaintiff advertises and sells, in this District,
under the identical trademark, and is using the identical or
very similar color scheme packaging box that contain goods
Defendant has sold and continues to sell in US commerce
including in this District.

24.  The foregoing acts of infringement are willful,
intentional, and in disregard of and with indifference to the
rights of What A Smoke.

25. As a result of Defendant's infringement of What A
Smoke's exclusive trademark rights, What A Smoke is entitled to
relief pursuant to trademark rights under 15 U.S. Code §
1121(a), and to its attorneys' fees and costs pursuant to 15
U.S.C. §1117(a).

26.  The acts of Defendant's are causing and, unless
enjoined and restrained by this Court, will continue to cause
What A Smoke irreparable injury. What A Smoke has no adequate
remedy at law. Pursuant to 15 U.S.C. §1116, Plaintiff is
entitled to injunctive relief prohibiting Defendants from

14

further infringing Plaintiff's trademark and ordering that
Defendants stop selling and advertising for sale their batteries
by using Plaintiff's OPTIMUM trademark and the DURACELL OPTIMUM
trademark.

### COUNT II

### Trade Dress Infringement/Unfair Competition, 15 U.S.C. § 1125

27.  Plaintiff incorporates all above allegations as if set
forth completely herein.

28.  Plaintiff markets, offers, sells, and delivers in U.S.
interstate commerce its distinctly packaged OPTIMUM e-cigarettes
and batteries and chargers therefore.

29.  What A Smoke manufactures its battery products
utilizing a predominantly black packaging with the word
"OPTIMUM" in a contrasting color scheme. Defendant's OPTIMUM
batteries also utilize a predominantly black packaging with the
word "OPTIMUM" in a contrasting color scheme. Additionally, What
A Smoke has used the aforementioned OPTIMUM packaging with its
numerous other products with the black packaging and a
coordinated color scheme since at least 2009. Through usage of
the consistently uniform color scheme in question, What A Smoke
has built a recognizable brand that is identified by consumers
with its high quality and safe e-cigarettes, e-cigarette
batteries and chargers, atomizers, charging cables.  What A

15

Smoke's customers have come to expect high quality batteries and chargers when they buy a black colored package with the word OPTIMUM on it.

30. Prior to Defendants' infringing conduct that forms the basis for this Complaint, consumers had come to associate the distinctive "look and feel" of the OPTIMUM packaging, which black packaging in a contrasting color scheme with the word OPTIMUM on it.

31. Through its promotional efforts, business conduct, and continuous sales of the OPTIMUM e-cigarettes and batteries and chargers therefor and their associated trade dress, Plaintiff has developed and maintained customers globally and throughout the United States, including in the State of New Jersey. Through its widespread and favorable acceptance and recognition by the consuming public, the "look and feel" of Plaintiff's OPTIMUM products has become an asset of substantial value as a symbol of What A Smoke, its high quality products and services, and its goodwill.

32. Accordingly, Plaintiff has established valid and enforceable rights in the "look and feel" of the OPTIMUM packaging, as described above.

33. Notwithstanding Plaintiff's preexisting valid and enforceable rights in the look of Plaintiff's OPTIMUM packaging,

16

Defendants, without permission or approval, are using Plaintiff's trade dress, or a trade dress that is confusingly similar to Plaintiff's, on their batteries' packaging by offering for sale their own batteries that have very similar, or substantially the same "look and feel" as Plaintiff's OPTIMUM packaging, which packaging Defendants sell and continue to sell in the United States, including in the State of New Jersey.

34. As a result of Defendants' unauthorized sale of their products under Plaintiff's trademark and trade dress that is substantially the same as the Plaintiff's, Defendants' have been using and continue to use without authorization Plaintiff's trade dress in connection with Defendants' products.

35. Plaintiff and Defendants sell (and have been selling) their respective products to customers and clients and/or the relevant consumer base in the same geographical locations and through the same trade channels.

36. Defendants are direct competitors of Plaintiff.

37. Defendants' unauthorized use of the "look and feel" of Plaintiff's contrasting color scheme packaging, in connection with offering for sale and selling their batteries under Plaintiff's OPTIMUM mark, is not authorized by Plaintiff and is likely to cause consumer confusion and mistake, and to deceive

17

consumers as to the source, origin, or affiliation of
Plaintiff's products.

38. Plaintiff has a discernible interest in the "look and
feel" of its products' packaging, and Plaintiff has been, and
continues to be, injured by Defendants' unauthorized and
unlawful use of Plaintiff's trade dress.

39. Defendants' unauthorized use of the "look and feel" of
Plaintiff's packaging, in connection with unauthorized sale of
Defendants' products bearing Plaintiff's OPTIMUM mark, is
causing confusion among purchasers and potential purchasers of
Plaintiff's products.

40. The acts by Defendants described above constitute an
infringement and misappropriation of What A Smoke's rights in
and to the use of the "look and feel" of the What A Smoke's
OPTIMUM packaging, with consequent damages to What A Smoke and
the business and goodwill associated with and symbolized by What
A Smoke's trade dress, and, specifically, give rise to this
claim under 15 U.S.C. § 1125.

41. Defendants' acts of unfair competition have caused and
are causing great and irreparable harm to What A Smoke, What A
Smoke's goodwill, and What A Smoke's rights in and to the "look
and feel" of the What A Smoke distinct packaging, in an amount
which cannot be adequately determined at this time and, unless

18

restrained, will cause further irreparable injury and damage, leaving What A Smoke with no adequate remedy at law.

42. On information and belief, Defendants' acts of infringement and misappropriation have been and are being committed with actual knowledge of What A Smoke's prior rights in the "look and feel" of the What A Smoke packaging, and are willful and in gross disregard of What A Smoke's rights.

43. By reason of the foregoing, What A Smoke is entitled to injunctive relief against Defendants, and anyone associated therewith, to restrain further acts of unfair competition and trade dress infringement, and to recover any damages proven to have been caused by reason of Defendants' aforesaid acts of unfair competition and trade dress infringement, and to recover enhanced damages based upon the willful, intentional, and/or grossly negligent activities of Defendants.

**COUNT III**

**Unfair Competition and False Designation of Origin**

**15 U.S.C. § 1125(a)**

44.  What A Smoke incorporates all above allegations as if set forth completely herein.

45.  What A Smoke owns common law trademark rights in and to the mark OPTIMUM in respect of "power sources, namely, batteries, battery chargers and AC power adapters for electronic

cigarettes", and "atomizers, tanks, refill cartridges and liquids for electronic cigarettes". The OPTIMUM mark has been in continuous use in interstate commerce by What A Smoke for at least ten (10) years, and prior to any date, which can be legally claimed by Defendants. What A Smoke's mark is distinctive by virtue of inherent distinctiveness and/or the acquired distinctiveness in the mark, through What A Smoke's efforts of promoting its goodwill and reputation in the relevant marketplace.

46.  What A Smoke owns common law trademark rights to its OPTIMUM mark in respect of a variety of goods, including batteries, battery chargers and AC power adapters for electronic cigarettes. The OPTIMUM mark has been in continuous use in interstate commerce by What A Smoke prior to any date which can be legally claimed by Defendants. Plaintiff's mark is distinctive by virtue of inherent distinctiveness and/or the acquired distinctiveness in the mark, through What A Smoke's efforts of promoting its goodwill and reputation in the relevant marketplace.

47.  Defendants knowingly and willfully have been and continue to advertise and sell its batteries bearing Plaintiff's OPTIMUM mark in the same price category without authorization by

20

What A Smoke in the State of New Jersey, and across numerous other states where What A Smoke and Defendants conduct business.

48.   Use by Defendants of (i) the OPTIMUM mark and/or (ii) packaging similar to Plaintiff's unique contrasting color scheme packaging in commerce, is likely to cause confusion and has caused confusion, in the marketplace misleading the public into thinking Defendants' unauthorized use is somehow associated with What A Smoke, causing competitive injury to What A Smoke, its OPTIMUM mark, and its trade dress of the packaging.

49.   Acts of Defendants as alleged herein constitute, among other things, false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact which are likely to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, or approval of the goods of Defendants, and otherwise constitute infringement and unfair competition in violation of 15 U.S.C. § 1125(a).

50.   As a direct and proximate result of Defendants' acts, What A Smoke has suffered injury, including irreparable injury, and damages, including lost profits, reasonable royalties, and other damages in an amount to be determined at trial.

**COUNT IV**

**Common Law Trademark Infringement and Trade Dress Infringement,**

**N.J. Stat. Ann. §56:3-13a to -13.22**

21

51.  What A Smoke incorporates all above allegations as if set forth completely herein.

52.  Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein. Plaintiff is the owner of common-law trademark rights in Plaintiff's Mark and Trade Dress in New Jersey and throughout the United States. These rights are senior and superior to any rights, which Defendants may claim. Defendants have used in commerce, without Plaintiff's consent, marks and trade dress that are identical or confusingly similar to Plaintiff's Mark and Trade Dress. Defendants' use of Plaintiff's Mark and Trade Dress is likely to cause consumer confusion, deception, or mistake among consumers as to the origin, source, sponsorship, affiliation, or approval by Plaintiff of Defendant's goods, in violation of New Jersey common law as preserved by New Jersey Statute Annotated Section 56:3-13a to -13.22.

53.  Defendant's conduct as described above has been intentional, willful, deliberate, malicious, and intended to injure Plaintiff, in clear disregard of Plaintiff's legal rights. Plaintiff has no adequate remedy at law inasmuch as money damages alone would not adequately compensate Plaintiff for the harm to its rights, goodwill, and business reputation, with every lost sale of Plaintiff's. Defendant's acts described

22

above greatly and irreparably damage Plaintiff and will continue to damage Plaintiff unless enjoined by this Court.

54.  What A Smoke owns common law trademark rights in and to the mark OPTIMUM for batteries. The OPTIMUM mark has been in continuous use in interstate commerce by What A Smoke prior to any date which can be legally claimed by Defendants. What A Smoke's mark is distinctive by virtue of inherent distinctiveness and/or the acquired distinctiveness in the mark, through What A Smoke's efforts of promoting its goodwill and reputation in the relevant marketplace.

55.  What A Smoke owns common law trademark rights to its OPTIMUM trademark with respect to batteries, and Trade Dress, which have been in continuous use in interstate commerce by What A Smoke prior to any date which can be legally claimed by Defendants. The mark is distinctive by virtue of inherent distinctiveness and/or the acquired distinctiveness in the mark, through What A Smoke's efforts of promoting its goodwill and reputation in the relevant marketplace.

56.  Defendants knowingly and willfully have been and continue to advertise and sell its batteries bearing Plaintiff's OPTIMUM mark in the same price category without authorization by What A Smoke in the State of New Jersey, and across numerous other states where What A Smoke and Defendants conduct business.

57.  Use by Defendants of (i) the OPTIMUM mark and/or (ii) packaging similar to Plaintiff's unique contrasting color scheme packaging in commerce, is likely to cause confusion and has caused confusion, in the marketplace misleading the public into thinking Defendants' unauthorized use is somehow associated with What A Smoke, causing competitive injury to What A Smoke, its OPTIMUM mark, and its trade dress of the packaging.

58.  Acts of Defendants as alleged herein constitute, among other things, false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact which are likely to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, or approval of the goods of Defendants, and otherwise constitute infringement and unfair competition in violation of 15 U.S.C. § 1125(a).

59.  As a direct and proximate result of Defendants' acts, What A Smoke has suffered injury, including irreparable injury, and damages, including lost profits, reasonable royalties, and other damages in an amount to be determined at trial.

60.  Use by Defendants of (i) Plaintiff's mark and/or (ii) the unique packaging color scheme in commerce is likely to cause confusion and has caused confusion, in the marketplace misleading the public into thinking Defendants' unauthorized use is somehow associated with What A Smoke, causing competitive

24

injury to What A Smoke, its OPTIMUM mark and the distinct packaging.

61. On information and belief, Defendants acted with knowledge of What A Smoke's ownership of (i) OPTIMUM mark and (ii) Plaintiff's packaging, and with deliberate intention or willful blindness to unfairly benefit from the goodwill associated with same.

62. Defendants' acts constitute trademark infringement and unfair competition in violation of the common law of New Jersey.

63. On information and belief, Defendants have made and will continue to make substantial profits and gains to which either is not in law or equity entitled.

64. On information and belief, Defendants will continue infringing acts, unless restrained by this Court.

65. Defendants' acts have damaged and will continue to damage What A Smoke, and What A Smoke has no adequate remedy at law.

66. The conduct herein complained of was extreme and was inflicted on What A Smoke in reckless disregard for its rights. The conduct was in bad faith, harmful to What A Smoke, and as such supports an award of exemplary and punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future.

67.   Defendants' appropriation and actual use in connection with infringement of What A Smoke's trademark (i) OPTIMUM and (ii) distinct packaging and the goodwill and reputation associated therewith and attached thereto, constitutes unfair competition in violation of New Jersey State Law, i.e., New Jersey Statute Annotated Section 56:4-1 et seq.

68. In light of the foregoing, What A Smoke is entitled to injunctive relief prohibiting Defendants from infringing the OPTIMUM mark and distinct packaging, and to recover all damages, including attorneys' fees, that What A Smoke has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

**COUNT V**

**Unjust Enrichment**

69. What A Smoke re-alleges every allegation in the preceding paragraphs.

70. The acts complained of above constitute unjust enrichment of Defendants at the expense of What A Smoke in violation of the common law of the State of New Jersey.

**COUNT VI**

**Fraud on the USPTO**

26

77.   What A Smoke re-alleges every allegation in the preceding paragraphs.

78.   Duracell's use of the Plaintiff's OPTIMUM mark is willful an intentional. Duracell first became aware, or should have become aware, of What A Smoke's OPTIMUM mark when it filed its own trademark applications for OPTIMUM and DURACELL OPTIMUM trademarks in Class 9 on November 12, 2018, after a reasonable inquiry and exercise of due diligence.

79.   A routine due diligence trademark clearance search of the USPTO records before filing of Duracell's two trademark applications should have revealed What A Smoke's two trademark registrations for OPTIMUM in Class 9.

80.   Duracell submitted a declaration with the applications to the USPTO to the effect that to the best of its belief no other person has the right to use the mark so that such use would cause confusion, mistake, or deception, and Defendant was warned in the declaration that it signed that there was a penalty associated with willfully false statements in the application.

81.   The filing by Duracell of its two trademark applications with the USPTO for OPTIMUM and DURACELL OPTIMUM was a willful misstatement and misrepresentation of facts with

blatant disregard of the senior trademark rights of What A Smoke and fraud on the US Patent and Trademark Office.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands a trial by jury and requests that the Court enter judgment as follows:

(a)   Issue a permanent injunction against Defendants' use of the OPTIMUM and DURACELL OPTIMUM trademarks effective immediately;

(b)   Issue an order prohibiting Defendants from selling, offering for sale, and advertising their goods under the OPTIMUM and DURACELL OPTIMUM trademarks effective immediately;

(c)   Issue an order prohibiting Defendants from advertising their goods under the OPTIMUM and DURACELL OPTIMUM trademarks on their website and elsewhere on the Internet effective immediately;

(d)   Issue an order to remove Defendants' webpage https://www.duracell.com/en-us/campaign-optimum/ which Defendants are using in order to infringe on Plaintiff's trademark, effective immediately;

(e)   Enter judgment against Defendants in favor of What A Smoke for the violations alleged in this Complaint;

(f)   Compelling Defendants to account to What A Smoke for any and all profits derived by Defendants as a result of their infringing acts;

(g)   Award What A Smoke all damages sustained by it as a result of Defendants' wrongful acts and all profits realized by Defendants due to its wrongful acts, pursuant to trademark infringement under 15 U.S.C § 1121(a), fraud on the USPTO under 15 U.S.C. §1120, and unfair competition pursuant to 28 U.S.C. § 1338(b);

(h)   At What A Smoke's election, awarding statutory damages in the maximum amount against What A Smoke for infringement of What A Smoke's trademark, pursuant to trademark infringement under 15 U.S.C § 1121(a), fraud on the USPTO under 15 U.S.C. §1120, and unfair competition pursuant to 28 U.S.C. § 1338(b);;

(i)   Award attorneys' fees and costs pursuant to 15 U.S.C § 1117(a);

(j)   Directing Defendants to pay over to What A Smoke its costs, disbursements and reasonable attorneys' fees and expenses, together with pre-judgment interest incurred by What A Smoke in relation to trying to stop the infringement by the Defendants by way of contacting Defendants through Plaintiff's attorneys,

demanding that Defendants in fact stop such
infringement;

(k)   For a preliminary and permanent injunction,
restraining Defendants and its affiliates, divisions,
officers, directors, principals, servants, employees,
successors and assigns, and all those in active
concert or participation with it from:

    i.  Directly or indirectly infringing in any manner
        What A Smoke's trademark and trade dress; and

    ii. From causing, contributing to, enabling,
        facilitating, or participating in the
        infringement of What A Smoke's trademark, trade
        dress, or other exclusive rights;

(l)   Order Defendants to pay discretionary costs and
prejudgment interest;

(m)   Order an accounting for any OPTIMUM or DURACELL
OPTIMUM branded products not presented at trial and an
award by the Court of additional damages for any such
products;

(n)   Order Defendants including all agents, officers,
employees, representatives, successors, assigns,
attorneys, and all other persons acting for, with, by,
through or under authority from Defendants or in

30

concert or participation with Defendants, and each of them, be enjoined from:

a. advertising, marketing, promoting, offering for sale, distributing, or selling bearing the infringing trademarks or trade dress;

b. using the infringing trademarks and/or trade dress on or in connection with any of Defendants' goods;

c. using any trademark, name, logo, design, or source designation of any kind on or in connection with What A Smoke's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of What A Smoke's trademarks, trade dresses, names, or logos; and,

e. using any trademark, name, logo, design, or source designation of any kind on or in connection with What A Smoke's goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by What A Smoke, or are sponsored or authorized by What A Smoke, or are in any way connected or related to What A Smoke;

(o)   Defendants be ordered to cease offering for sale,
      marketing, promoting, and selling and to recall all
      infringing goods, or any other goods bearing the What
      A Smoke mark or trade dress or any other a confusingly
      similar imitation thereof that is in Defendants'
      possession or has been shipped by Defendants or under
      their authority, to any customer, including, but not
      limited to, any wholesaler, distributor, retailer,
      consignor, or marketer, and also to deliver to each
      such store or customer a copy of this Court's order as
      it relates to said injunctive relief against
      Defendants, including posting same on any and all
      website and media owned or controlled, or not owned or
      controlled, by Defendants including but not limited to
      Duracell and  YouTube websites;

(p)   Defendants be ordered to deliver up for impoundment
      and for destruction, all goods, boxes, labels, tags,
      signs, packages, receptacles, advertising, sample
      books, promotional materials, stationery, or other
      materials in the possession, custody or under the
      control of Defendants that are found to adopt or
      infringe any of What A Smoke's trademarks or trade

dress, or that otherwise unfairly compete with What A Smoke and its products;

(q)  Defendants be compelled to account to What A Smoke for any and all profits derived by Defendants from the sale or distribution of the goods bearing the infringing trademark and trade dress;

(r)  Retaining jurisdiction of this action in this Court for the purpose of enabling What A Smoke to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of such order, for the enforcement or compliance therewith, and for the punishment of any violation thereof;

(s)  Require Defendants to publish on his website, and anywhere else they mention OPTIMUM or DURACELL OPTIMUM, to state that OPTIMUM and the distinct Plaintiff's packaging are sole property of What A Smoke and that any prior statements of association with What A Smoke or OPTIMUM are false and that this statement has been ordered by a Federal Court;

(t)  That Defendants unjustly enriched themselves and that What A Smoke be awarded damages arising out of the unjust enrichment;

(u)   That What A Smoke asks this Court to enter judgment in favor of it finding that Defendants violated the Lanham Act;

(v)   Ordering that the US Customs and Border Protection heretofore seizes and arrests any and all of Defendants' infringing goods, such as the batteries bearing the infringing trademarks and trade dress in question, that violate Plaintiff's trademark rights, trade dress and other rights;

(w)   Enjoining Defendants from making false and misleading descriptions of fact to potential customers and to the consuming public;

(x)   Awarding prejudgment interest and costs;

(y)   Finding this to be an exceptional case and awarding reasonable attorneys' fees to What A Smoke;

(z)   Based on Defendants willful and deliberate infringement, and to deter such conduct in the future, What A Smoke requests punitive damages including prejudgment and post-judgment interest on all monetary awards, and to award treble damages to Plaintiff;

(aa)  Grant What A Smoke such other and further relief, at law or in equity, to which What A Smoke is justly entitled.

34

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues permitted to be tried by jury.


/S/ Sergei Orel                    Date:  __August 13, 2019___


Richard Gearhart, NJ Bar No.: 022742006
Sergei Orel, NJ Bar No.: 008862001
Gearhart Law, LLC
41 River Road,
Summit, NJ 07901
Tel: (908) 273-0700
rgearhart@gearhartlaw.com
sorel@gearhartlaw.com
Attorneys for Plaintiff
What A Smoke, LLC

35