GEARHART LAW, LLC
Richard Gearhart, NJ Bar No.: 022742006
Sergei Orel, NJ Bar No.: 008862001
41 River Road,
Summit, NJ 07901
Tel: (908) 273-0700
rgearhart@gearhartlaw.com
sorel@gearhartlaw.com
Attorneys for Plaintiff
What A Smoke, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| What A Smoke, LLC,<br><br><br>Plaintiff,<br><br>v.<br><br>Duracell U.S. Operations, Inc.,<br><br>Defendant. | CIVIL ACTION<br><br>NO.: 2:19-cv-16657-JMV-DAC |

**PLAINTIFF WHAT A SMOKE, LLC'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS II, IV, V and VI OF PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)**

**<u>TABLE OF CONTENTS</u>**

**Page**

PRELIMINARY STATEMENT………………………………………………4

ARGUMENT……………………………………………………………7

     I.    Standard On A Motion To Dismiss…………………………………..7

     II.   Plaintiff's Federal And State Law Claims Are Adequately
         Pled And Should Not Be Dismissed………………………………..8

         A.    Plaintiff's Complaint Has Sufficiently Alleged Plaintiff's
               Protectable Trade Dress And Its Violation By Defendant
               (Counts II and IV)……………………….………………………8

         B.    Plaintiff has Adequately Pleaded "Fraud on the USPTO" Under
               the Lanham Act (Count  VI) …………..………………………11

         C.    Plaintiff Adequately Pled Unjust Enrichment (Count V)……….15

         D.    Leave To Amend Counts II, IV, V and VI Of The Complaint….16

     III.   CONCLUSION…………………………………………………..17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Airs Fragrance Prods. v. Clover Gifts, Inc.*,
   395 Fed. Appx. 482 (9th Cir. 2010) …………………………….………………...15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)……………………………………………………….……………8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) …………………………………………………………….……9

*Callano v. Oakwood Park Homes Corp.*,
   91 N.J.Super. 105 (App.Div.1966)… ……………………………………………17

*Charpentier v. Godsil*,
   937 F.2d 859 (3d Cir. 1991)……………………………………………………...18

*Covertech Fabricating, Inc. v. TVM Bldg. Prods.*,
   855 F.3d 163 (3d Cir. 2017)…………………………………………………….13

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)……………………………………………………...8, 9

*In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009) …………………………………...…13, 14

*Liko AB v. Rise Lifts, Inc.*,
   625 F. Supp. 2d 250, 2008 U.S. Dist. LEXIS 101542 (E.D. Pa. Dec. 15, 2008)………..9

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*,
   511 F.3d 350 (3d Cir. 2007)…………………………………………..………...…..9

*Marshak v. Treadwell*, 240 F.3d 184 (3d Cir. 2001) ………………………………………13, 14

*National Amusements, Inc. v. New Jersey Turnpike Authority*,
   261 N.J. Super. 468 (1992) …………………………………..……………………...16

*Nesselrotte v. Allegheny Energy, Inc.*,
   2007 U.S. Dist. LEXIS 79147, 2007 WL 3147038 (E.D. Pa Oct. 25, 2007)…………..17

*Rose Art Indus., Inc. v. Swanson*,
   235 F.3d 165 (3d Cir. 2000)……………………………………………………..9

*Undefeated, Inc. v. UNCL, LLC*,
   2013 U.S. Dist. LEXIS 197995, (C.D. Cal. 2013) …………………………….…...15

**Statutes and Rules**

Fed. R. Civ. P. 15(a)…..………………………………………………………....17
15 U.S.C. § 1119……………………………………………………………...14
15 U.S.C. § 1120…………………………………………………………13, 14
15 U.S.C. § 1125……………………………………………………………….7
15 U.S.C. § 1064(3) ………..……………………………………………....13

## PRELIMINARY STATEMENT

Defendant Duracell U.S. Operations, Inc., ("Duracell" or "Defendant") moved to dismiss the counts II, IV, V and VI of Plaintiff What A Smoke, LLC's ("WAS") Complaint. Defendant's legal theories and contentions are misplaced, and Defendant's motion must be dismissed.

The facts relevant to Defendant Duracell's infringement of Plaintiff What A Smoke, LLC's crown jewel OPTIMUM trademark have been described in detail in Plaintiff's initial Complaint, Amended Complaint, and 2nd Amended Complaint, and in the Exhibits thereto.

However, for the purposes of opposing Defendant's motion to dismiss, by way of a brief summary of the relevant facts, please note the following.

Plaintiff What A Smoke, LLC, has senior common law and federal law trademark rights in its trademark OPTIMUM, which it has registered with the USPTO and been using in respect of its Class 9 goods such as "power sources, namely, batteries, battery chargers and AC power adapters for electronic cigarettes" and Class 34 goods such as "atomizers, tanks, refill cartridges and liquids for electronic cigarettes".

Defendant is trying its hardest in its motion to mischaracterize the nature of Plaintiff's company as a mere vaping goods company, and that of its goods being batteries, but not that kind of batteries, and the seriousness and blatant nature of Defendant's trademark infringement of Plaintiff's senior trademark rights in an identical trademark OPTIMUM in respect of identical goods – batteries.

However, there is no escaping the fact that Duracell is infringing What A Smoke, LLC's trademark rights of its OPTIMUM trademark that WAS uses and has registered on "batteries", by selling Duracell's own OPTIMUM branded batteries. It is of no consequence that What A Smoke, LLC's main line of business is selling vaping devices. What A Smoke, LLC, also sells

replacement batteries for its vaping devices, which replacement batteries are OPTIMUM branded.

It is easy to imagine a scenario where an infringing company battery maker could similarly be infringing senior trademark rights of another company that operates in an industry different to that of the infringing company, such as, for example, a company that manufactures and sells smartphones, where such smartphone company would have a Class 9 USPTO trademark registration for its mark, and where the goods in such trademark registration, and the goods on which such company would be using its mark, would be portable phones, smartphones, and batteries therefor. Such possible infringement by the battery making company would be no less of an infringement just because it would be infringing on the trademark rights not of a AA battery manufacturer, but those of a personal smartphone maker, that also sells batteries for its phones, which are an integral part of a phone, just like Plaintiff's batteries and battery charges are an integral part of its vaping devices.

Duracell's argument that this Honorable Court should somehow disregard Duracell's blatant infringement of small business defendant What A Smoke, LLC's senior trademark rights in an identical mark – OPTIMUM – in respect of identical goods - batteries, is disingenuous at best.

Duracell's use and attempts to obtain a US trademark registration of its own OPTIMUM mark on batteries in Class 9, in blatant disregard of WAS's senior rights in its OPTIMUM trademark that WAS has been using and has registered in Class 9 in respect of batteries, is the text book definition of trademark infringement, since WAS also sells consumer products – vaping devices – that are sold in the same streams of commerce where AA batteries are sold.

First, the Defendant contends that Plaintiff has not sufficiently alleged "trade dress infringement" under the Lanham Act. However, this contention ignores the well-pleaded facts in the Complaint, Amended Complaint, and Second Amended Complaint, that unmistakably show that Defendant has been violating Plaintiff's trade dress rights. Specifically, Duracell's packaging is too similar to Plaintiff's packaging to the point of confusion, thus supporting Plaintiff's claim of trade dress infringement under the Lanham Act and Defendant's allegations and arguments in its Motion to Dismiss do not serve as a basis for dismissal of Plaintiff's Lanham Act claim in Count II of Plaintiff's Complaint, i.e., Trade Dress Infringement/Unfair Competition, under 15 U.S.C. § 1125.

Second, Plaintiff has alleged in all three versions of its Complaints with sufficient particularity Defendant's fraud on the USPTO. Defendant's Chief IP Counsel Plaintiff is being incorrect in its motion to dismiss when it says that that USPTO Examiner "agreed to suspend her examination of Duracell's trademark applications". The USPTO Examiner who is examining Duracell's OPTUMUM and DURACELL OPTIMUM applications has in fact rejected both applications, twice, in Examiner's Office Actions, on the basis of Plaintiff's senior OPTIMUM trademark registrations in Class 9 on identical goods – batteries. It is true that the prosecution stage of Duracell's two trademark applications has been suspended pending the resolution of the present court case, because that is normal USPTO practice to suspend applications pending the resolution of court disputes related to the trademarks under examination.

Third, Plaintiff has alleged in sufficient particularity Defendant's unjust enrichment as a result of its infringing activities. Defendant, being the number one battery manufacturer worldwide, with annual revenue calculated in the billions of dollars, has easily been able to flood the market with its OPTIMUM batteries in the last six months alone since its OPTIMUM battery

launch in July 2019, which OPTIMUM batteries manufactured by Duracell are now sold in many stores where consumer electronic products are sold, including in small stores such as corner and grocery stores, in the USA, and where Duracell through its heavy advertising and marketing efforts of its OPTIMUM batteries has virtually destroyed Plaintiff's business. Plaintiff, being a small company, is unable to compete with Duracell to protect its OPTIMUM mark. Defendant has caused a virtual demise of Plaintiff's OPTIMUM brand through its shameless infringing activities.

Finally, Defendant's challenges to WAS's Complaint do not serve as a basis for dismissal. Thus, Defenant's motion must be denied in its entirety.

## ARGUMENT

### I.      Standard On A Motion To Dismiss

In evaluating a motion to dismiss, a court should accept all facts pleaded in the complaint as true, and construe those facts in the light most favorable to the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quotations omitted) ("[C]ourts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, a plaintiff may be entitled to relief."). A complaint need only allege a "plausible" claim for relief.  Id.  at  210-11.   A complaint  is  facially  plausible  if  it  allows  the  court  to  make a  "reasonable inference" that the defendant is liable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). Facial plausibility  is  not a  high  standard;  the plaintiff need only show more than a "sheer possibility" that it is entitled to relief.  Id. at 678.  A court, in evaluating plausibility, should draw on judicial experience  and common sense. Fowler, 578 F.3d at 211.

II.     **Plaintiff's Federal And State Law Claims Are Adequately Pled And Should Not Be Dismissed.**

    A.     **Plaintiff's Complaint Has Sufficiently Alleged Plaintiff's Protectable Trade Dress And Its Violation By Defendant (Counts II and IV)**

Plaintiff has pled Trade Dress Infringement with sufficient particularity in the 2nd Amended Complaint [¶¶28-46] in order to sustain the Count II in the complaint.

In Liko AB v. Rise Lifts, Inc., 625 F. Supp. 2d 250, 2008 U.S. Dist. LEXIS 101542 (E.D. Pa. Dec. 15, 2008), the court dealt with a similar issue, a motion to dismiss by defendant in that suite of the count containing allegations of trade dress infringement. The court held that a "claim of trade dress infringement consists of three elements: "(1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of plaintiff's product with that of defendant's product." Id. at 10-11, citing McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 357 (3d Cir. 2007). The court held that the revised and expanded allegations of Count II address the three elements of trade dress infringement, and satisfy the notice pleading requirements required to survive a Rule 12(b)(6) motion to dismiss under the standard elucidated in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Id. at 11.  The court in Liko said that "trade dress is "the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color combinations, texture, graphics, or even a particular sales technique." (quoting McNeil Nutritionals, 511 F.3d at 357 (quoting Rose Art Indus., Inc. v. Swanson, 235 F.3d 165, 171 (3d Cir. 2000)). The Court found in Liko that the Plaintiff had pled the elements of a claim of trade dress infringement and denied Defendants' Motion to Dismiss Plaintiff's Count of the complaint containing allegations of trade dress. Id. at 11.

In this case, similarly, Plaintiff sufficiently identified protectable elements of its trade dress, namely, a "predominantly black, brown and gold color scheme packaging, with the word "OPTIMUM" appearing horizontally within the horizontal brown portion of the packaging".

When compared to Defendant's very similar packaging color scheme to that of the Plaintiff's, it is clear to an observers such as a consumer that the two respective packages' color schemes are similar and the consumers would be confused as to the origin of both packages.

The below image, which was already provided in Plaintiff's 2nd Amended Complaint, on Page 6 thereof, and [¶9], illustrates Plaintiff's distinct non-functional packaging with black background and horizontal brown stripe with the mark OPTIMUM displayed horizontally in the upper part of the package's front, next to a very similar thereto Duracell's packaging design that also has a black background and goldish-brownish horizontal line with OPTIMUM appearing horizontally in the upper part of the package's front.

When comparing the two packages one next to the other, it is quite obvious that both packages are similar, and the consumer confusion is likely, and it is respectfully submitted that the Plaintiff has established in its complaint that it possesses a distinct protectable trade dress, and the question of infringement of such Plaintiff's trade dress should be reserved for the trier of fact in this lawsuit, and that the counts II and IV of Plaintiff's complaint should not be dismissed at this early motion stage.



Plaintiff's packaging for its cigarette kit (as shown in the above image) has been for many years, since 2009, consistently black with a brown and gold portion running horizontally across. Such packaging with its distinct black, and brown/gold color scheme and the marks What A Smoke and OPTIMUM on it, is recognized by Plaintiff's customers as the source for high quality smoking devices and accessories contained therein.  Defendant Duracell's packaging's similar black and gold color scheme and similar positioning of the OPTIMUM mark underneath the company name mark is infringing on Plaintiff's trade dress.  Therefore, Plaintiff has a colorable trade dress claim against Defendant. The fact that Plaintiff also sells its other products in different color packaging does not diminish the fact of Defendant's infringement of Plaintiff's trade dress as is illustrated in the image, which Plaintiff's trade dress and infringement thereof by the Defendant the Plaintiff has pled with sufficient particularity in the 2nd Amended Complaint.

**B.      Plaintiff has Adequately Pleaded "Fraud on the USPTO" Under the Lanham Act (Count VI)**

The Defendant also contends that Plaintiff's Lanham Act claim of fraud on the USPTO should be dismissed because it has failed to sufficiently allege any "fraud" under the Act, and that Defendant should be absolved of responsibility for its false statement in the trademark application declarations it signed under penalty in its two trademark applications for OPTIMUM and DURACELL OPTIMUM that it was not aware of any other person that has the right to use the mark so that such use by Duracell would cause confusion, mistake, or deception, just because its trademark application have not yet resulted in registration at the USPTO. Duracell may not have its trademarks registered at the USPTO, quite rightfully, because Duracell's two trademark applications for DURACELL and DURACELL OPTIMUM are junior to What A Smoke, LLC's senior trademark rights in OPTIMUM, but that does not change the fact that Duracell submitted

an untruthful statement in its applications declarations that they were allegedly unaware of any other parties' rights in the trademark OPTIMUM, while Duracell was in fact aware of Plaintiff's trademark registrations.

The Lanham Act provides that a third party may petition for cancellation of a registered trademark if the registration was procured by fraud, 15 U.S.C. §§ 1064(3), 1120, a showing that must be made by clear and convincing evidence that the "applicant or registrant knowingly ma[de] a false, material representation with the intent to deceive the PTO," In re Bose Corp., 580 F.3d 1240, 1245 (Fed. Cir. 2009); see Marshak v. Treadwell, 240 F.3d 184, 196 (3d Cir. 2001). That intent to deceive can be inferred from indirect or circumstantial evidence, In re Bose Corp., 580 F.3d at 1245, indicating that "the registrant actually knew or believed that someone else had a right to the mark," Marshak, 240 F.3d at 196.

In Covertech Fabricating, Inc. v. TVM Bldg. Prods., 855 F.3d 163 (3d Cir. 2017), the US Court of Appeals was faced with a situation not dissimilar to the facts at hand, where the President of the defendant company in that suit, attested in connection with TVM's petition to register its ULTRA mark that "he believed no other person, firm, corporation, or association ha[d] the right to use the mark," a statement he made under penalty of perjury, just as Duracell made a similar statement in its own two applications.  The Court of Appeals held that the District Court was entirely justified in finding defendant company President's testimony at trial not credible and in concluding that, "[i]n light of Mr. Boulding's prior interactions with Covertech, he must have known or believed that Covertech had a right to use the mark." While Boulding asserted his statement was a mere mistake, the District Court astutely observed, first, that TVM was aware on the date of its PTO application that Covertech had recently registered the ULTRA mark in Canada, and second, that Covertech continued to sell ULTRA in the United States at that

13

time, placing the companies in direct competition. Deferring to the District Court's credibility findings, which are fully supported by the record, the Appellate Court perceived no error in the District Court's determination that defendant company's President subjectively intended to deceive the PTO, (citing In re Bose Corp., 580 F.3d at 1245; Marshak, 240 F.3d at 196,) and concluding that defendant TVM obtained registration of the ULTRA mark through fraud.

Discovery has shown that Defendants counsel was clearly aware of Plaintiff's OPTIMUM marks and federal trademark registrations therefor prior to filing their OPTIMUM and DURACELL OPTIMUM trademark applications, as Defendant had conducted a full, complete, and all encompassing trademark search covering the USA, which identified Plaintiff's OPTIMUM marks prior to Defendant's filing their OPTIMUM trademark applications. Defendant filed its trademark applications with full knowledge of the senior rights of Plaintiffs' trademark registrations.   Fraudulent statements by legal counsel for Defendant who signed the applications declarations for submission to the USPTO when filing the trademark applications should be discouraged and addressable at any stage of a proceeding, and should have consequences for parties that make them.  Moreover, if Defendant somehow later obtains registrations for their marks in the future, is it then left to Plaintiff to come back to the Court for another ruling on the fraud issue?  In the meantime, the Plaintiff has gone to a great expense to defend its rights against infringement of its marks by Duracell, both in the current lawsuit and in defending Duracell's dubious cancellation proceedings that it has instituted against Plaintiff's OPTIMUM trademark registrations at the USPTO, in order to jam through Defendant's own OPTIMUM marks, which trademark infringement Defendant should not have committed in the first place, knowing of Plaintiff's prior trademark rights in OPTIMUM, or should not be allowed

14

to continue to be committing trademark infringement on the Plaintiff's rights for at least six months straight now.

Even if one were to agree that a federal court does not have jurisdiction over a pending federal trademark application, as opposed to a federal trademark registration, as per 15 U.S.C. § 1120, and pursuant to 15 U.S.C. § 1119, however, this court still has jurisdiction over the parties to the lawsuit. Therefore, even if one were to assume that the court cannot order the USPTO to abandon the infringing application(s), the court can certainly order the infringing party to expressly abandon its trademark application(s), including for the reasons of alleged fraud. In one decision, the Court of Appeals for the Ninth Circuit affirmed an order issued by the District of Nevada requiring a party to abandon its trademark application: "The district court did not abuse its discretion by ordering the parties to withdraw any pending trademark applications relating to the Airs family of trademarks". *See* Airs Fragrance Prods. v. Clover Gifts, Inc., 395 Fed. Appx. 482, 485 (9th Cir. 2010). Further, in Undefeated, Inc. v. UNCL, LLC, 2013 U.S. Dist. LEXIS 197995, *5 (C.D. Cal. 2013), the district court held similarly that "because the Court possesses jurisdiction over the action and the parties, the Court could fashion a remedy … even if the Court may otherwise lack jurisdiction over the Amended Counterclaim's declaratory judgment claim because it involves a pending application rather than a registration. Specifically, … the Court could order Undefeated to withdraw its pending [ ] applications." Id. at 5.

In this case, Defendant wants to be saved by the fact that it has not managed to obtain a trademark registration, all the while violating Plaintiff's senior trademark rights, because 15 U.S.C. § 1120 requires that infringer's trademarks be registered in order for a fraud on the USPTO claim to be sustained. However, Defendant did submit a bad faith, fraudulent statement

to the USPTO all the same, when filing the trademark applications, registration or no registration.

It seems that the law's reach has been unduly limited, giving cover to infringers whose marks have not proceeded to registration.

It is a bad public policy when infringers like Duracell can continue to be allowed to disregard senior trademark rights of others like Plaintiff, to act with impunity, and to be allowed to select and apply for registration of trademarks identical to those of existing registered senior trademarks of others, like Plaintiff's, in respect of identical goods (batteries in this case), causing serious and potentially fatal damage to the senior trademark owners, their trademarks, and to their businesses.

However, as mentioned above, this Honorable Court does have jurisdictions over the parties to this lawsuit, and over this action, and the Court could order, as a remedial action in this lawsuit, that Duracell withdraw its two pending USPTO trademark applications for OPTIMUM and DURACELL OPTIMUM. Therefore, the fraud claim in Plaintiff's complaint must be sustained.

### C.      Plaintiff Adequately Pled Unjust Enrichment (Count V)

Plaintiff has adequately asserted unjust enrichment by Defendant in Paragraphs 72 and 73 of the 2nd Amended Complaint.

Under New Jersey law, unjust enrichment is the basis for a claim of quasi-contractual liability. National Amusements, Inc. v. New Jersey Turnpike Authority, 261 N.J. Super. 468, 478, 619 A.2d 262, 1992 N.J. Super. LEXIS 466 (1992).  The court in National Amusements said that the duty which forms the foundation of a quasi-contractual obligation rests on the equitable principle that a person shall not be allowed to enrich himself at the expense of another.

16

Id. At 478 (citing Callano v. Oakwood Park Homes Corp., 91 N.J.Super. 105, 108, 219 A.2d 332 (App.Div.1966)). To recover on a theory of quasi-contract, plaintiff must prove that the defendants were "enriched, … received a benefit, and that retention of the benefit without payment therefor would be unjust." Id. at 478 (citing Callano at 109, 219 A.2d 332.)

In the present case, Defendant has clearly enriched itself due to its infringement of Plaintiff's OPTIMUM trademark. In fact, the limited discovery that Defendant has requested as a result of Plaintiff's having filed a Motion for Preliminary Injunction in this case, has already shown that Defendant has been realizing vast amounts of profits through the sales of its infringing OPTIMUM product in the United States alone, all in violation of Plaintiff's senior trademark rights in the OPTIMUM trademark.  To allow Defendant to continue infringing on Plaintiff's trademark in violation of Plaintiff's senior trademark rights, while continuing to profit immensely from the opportunity to use OPTIMUM trademark with impunity, would be unjust, in accordance with New Jersey law, as discussed above.

### D.     Leave To Amend Counts II, IV, V and VI Of The Complaint

If the Court deems any of the above Counts to be defective, then Plaintiff respectfully asks this Court to allow Plaintiff to amend the Complaint in order to amend said Counts and to present them in more particularity to the Court's satisfaction, as allowed per Fed. R. Civ. P. 15(a), which provides that leave to amend a pleading shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). This liberal amendment philosophy limits the district court's discretion to deny leave to amend. Nesselrotte v. Allegheny Energy, Inc., 2007 U.S. Dist. LEXIS 79147, 2007 WL 3147038 (E.D. Pa Oct. 25, 2007).  Motions to amend pleadings should be liberally granted, and leave to amend must generally be granted unless equitable considerations render it otherwise unjust. Id. at 6.  Unless the opposing party will be prejudiced, leave to amend

should generally be allowed." <u>Charpentier v. Godsil</u>, 937 F.2d 859, 864 (3d Cir. 1991).

Defendant the trademark infringer in this lawsuit will not be prejudiced by allowing Plaintiff to amend the pleadings, especially where Counts I and III in the complaint are unopposed and remain in the complaint, and therefore, there will be little detriment to the Defendant if it is forced to defend itself on six counts as opposed to two.

### III.    CONCLUSION

It is respectfully submitted that the Court should not dismiss Counts II, IV, V and VI of Plaintiff's complaint for the reasons listed above.

At the very least, if the Court deems any of the above Counts to be defective, then it is respectfully requested that the Court allow Plaintiff to amend said Counts and to present them in more particularity.

Respectfully submitted,

Dated: January 7, 2020                              By: <u>/Sergei Orel/</u>

Sergei Orel
Gearhart Law LLC
41 River Road,
Summit, NJ 07901
Tel: 908-273-0700
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing letter application was served on

Defendant c/o its counsel, Rob Phillips, Esq., by ECF on this 7th day of January 2020, at the email

address of record with the Court:

James T. Hultquist (admitted *pro hac vice*)
10 S. Wacker Drive, 40th Floor
Chicago, IL  60606-7507
jhultquist@reedsmith.com

Robert N. Phillips (admitted *pro hac vice*)
101 Second Street, Suite 1800
San Francisco, CA  94105-3659
robphillips@reedsmith.com

Melissa A. Geist
REED SMITH LLP
136 Main Street, Suite 250
Princeton Forrestal Village
Princeton, New Jersey 08540
mgeist@reedsmith.com


_____/Sergei Orel/____
Sergei Orel

19