**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

WHAT A SMOKE, LLC,

    *Plaintiff*,

v.

DURACELL U.S. OPERATIONS, INC.,

    *Defendant*.

Civil Action No. 19-16657
(JMV) (JAD)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This matter primarily centers on Plaintiff What A Smoke's trademark and trade dress infringement claims against Defendant Duracell U.S. Operations, Inc. ("Duracell"). Presently before the Court is Defendant's motion to dismiss Counts II, IV, V, and VI of Plaintiffs' Second Amended Complaint ("SAC"). D.E. 37. The Court reviewed all the submissions in support and in opposition[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons discussed below, the motion to dismiss is **GRANTED**.

---

[1] Defendant's brief in support of its motion is referred to as "Def's Br.," D.E. 37-1; and Plaintiffs' brief in opposition is referred to as "Pl. Opp'n," D.E. 47.

**I.     FACTUAL BACKGROUND**[2]

Plaintiff What A Smoke is a limited liability company organized in New Jersey; it was started in 2008. SAC ¶ 4. Plaintiff "is in the business of bringing safe nicotine delivery device products to the market" and purports to be "a leading innovator, manufacturer and marketer of safe e-cigarette products under its OPTIMUM brand, including batteries and electric chargers therefor." *Id.* ¶ 13. Defendant Duracell is a Delaware corporation that sells and advertises goods and services in New Jersey. *Id.* ¶ 5.

What A Smoke holds two trademark registrations with the United States Patent and Trademark Office ("USPTO") – Registration Numbers 5,106,639 ("639") and 5,016,640 ("640"). *Id.* ¶ 14. 639 pertains to "[p]ower sources, namely, batteries, battery chargers and AC power adapters for electronic cigarettes" in International Class 9, while 640 addresses "[a]tomizers, tanks, refill cartridges and liquids for electronic cigarettes" in International Class 34. *Id.* (internal quotations omitted). Plaintiff further alleges that it "owns common law trademark rights to its OPTIMUM trademark with respect to batteries, and Trade Dress." *Id.* ¶ 58.

Plaintiff continues that its OPTIMUM e-cigarettes and batteries are "distinctly packaged" "utilizing a predominately black, brown and gold color scheme packaging, with the word 'OPTIMUM' appearing horizontally within the horizontal brown portion of the packaging" under the name What A Smoke. *Id.* ¶ 28-29. Plaintiff further alleges that since 2009, the "packaging for its cigarette kit has been . . . consistently black with a brown and gold portion running horizontally across." *Id.* ¶ 30. This distinct packaging, along with the marks "What A Smoke" and

---

[2] The factual background is taken from the SAC, D.E. 35. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

"OPTIMUM," Plaintiff alleges, "is recognized by [its] customers as the source for high quality smoking devices and accessories contained therein." *Id.*

Plaintiff submits that through the use of a "consistently uniform color scheme," it has "built a recognizable brand that is identified by consumers with its high quality and safe e-cigarettes, e-cigarette batteries and charges, atomizers, [and] charging cables." *Id.* ¶ 32. Plaintiff adds that its "customers have come to expect high quality batteries and chargers when they buy a black, brown and gold colored package with the word OPTIMUM on it." *Id.* Plaintiff contends that the "look and feel" of its OPTIMUM products "has become an asset of substantial value as a symbol of What A Smoke, its high quality products and services, and its goodwill." *Id.* ¶ 34.

Defendant currently owns two "infringing USPTO trademark applications" – Serial Numbers 88/190,116 for OPTIMUM, and 88/190,119 for DURACELL OPTIMUM. *Id.* ¶ 6. According to Plaintiff, Defendant "became aware of What A Smoke's OPTIMUM mark" on November 12, 2018, when it filed trademark applications for OPTIMUM and DURACELL OPTIMUM in Class 9. *Id.* ¶ 15. In its applications, Duracell signed a declaration which attested to the following:

> To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on it in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive. To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

*Id.* ¶ 15.  Plaintiff alleges that the foregoing attestation was at best erroneous because, through a trademark search of the USPTO records prior to filing, Defendant "should have discovered, and undoubtedly it did in fact discover What A Smoke's two trademark registrations for OPTIMUM in Class 9[.]"  *Id.*

Plaintiff further asserts that the USPTO examiner assigned to review both of Defendant's trademark applications "refused to register Duracell's OPTIMUM and DURACELL OPTIMUM marks because the examiner correctly concluded that both [of] Duracell's marks were confusingly similar to What A Smoke's senior OPTIMUM mark."  *Id.* ¶ 16.  Plaintiff likewise alleges that the USPTO rejected both of Defendant's trademark applications "on the grounds of a likelihood of confusion with What A Smoke's senior OPTIMUM mark."  *Id.*

According to Plaintiff, after Defendant's trademark applications were rejected by the USPTO, Defendant contacted "What A Smoke asking for permission to use [the] OPTIMUM mark on batteries."  *Id.* ¶ 17.  Duracell "was provided with evidence of What A Smoke's prior and senior use of the OPTIMUM marks in commerce for batteries," and while discussions for dispute resolution were ongoing, "to Plaintiff's complete and utter shock, and without permission or any communication to Plaintiff whatsoever, Duracell launched its product for batteries using Plaintiff's OPTIMUM mark."  *Id.*  Plaintiff indicates that since approximately July 15, 2019, Duracell has promoted and sold its batteries in violation of Plaintiff's senior trademark rights.  *Id.* ¶ 18.  Through Defendant's website, it allegedly "appropriate[s] What A Smoke's OPTIMUM trademark by using [it] to advertise similar or identical goods, namely, batteries."  *Id.* ¶ 9.

According to the SAC, Defendant uses similar packaging to Plaintiff – including a "similar black and gold color scheme" and "similar positioning of the OPTIMUM mark underneath the company name mark."  *Id.* ¶ 31.  Defendant's OPTIMUM batteries also allegedly "utilize a

predominately black packaging, with gold-brownish coloring, with the word 'OPTIMUM' in a contrasting color scheme." *Id.* ¶ 32. Plaintiff alleges that Defendant is "using Plaintiff's trade dress, or a trade dress that is confusingly similar"; that Plaintiff and Defendant sell their respective products to consumers in the same geographical locations; and that "Defendant is a direct competitor of Plaintiff." *Id.* ¶ 36-39. According to Plaintiff, Defendant's advertisement, distribution, promotion, and sale of "batteries bearing OPTIMUM and DURACELL OPTIMUM trademarks" "creates confusion in the minds of consumers about the source of the relevant goods." *Id.* ¶ 9. Plaintiff continues that customers "were, have been, and are continuing to be led to believe that Plaintiff's goods are those of the Defendant, or vice versa," and that this has "result[ed] in dilution of Plaintiff's trademark and loss of income to Plaintiff." *Id.* ¶ 10. Plaintiff believes that Duracell's current marketing campaign is "design[ed] to general millions, if not billions, of dollars of sales revenue," and "a business of Plaintiff's size cannot compete against it." *Id.* ¶ 18. Plaintiff adds that "[t]he time, effort, and money that [it] has invested in its business is being trampled by Duracell[']s" use of Plaintiff's mark. *Id.*

## II.     PROCEDURAL HISTORY

What A Smoke filed a Complaint on August 13, 2019, D.E. 1, a First Amended Complaint on September 6, 2019, D.E. 4, and a Second Amended Complaint ("SAC") on November 9, 2019, D.E. 35. The SAC includes six Counts: Count I, alleging trademark infringement, SAC ¶¶ 19-26; Count II, alleging "trade dress infringement/unfair competition, 15 U.S.C. § 1125," SAC ¶¶ 27-46; Count III, alleging "unfair competition and false designation of origin, 15 U.S.C. § 1125(a)," SAC ¶¶ 47-53; Count IV, alleging "common law trademark infringement and trade dress infringement, N.J. Stat. Ann. § 56:3-13a to -13.22," SAC ¶¶ 54-71; Count V, alleging unjust

enrichment, SAC ¶¶ 72-73; and Count VI, alleging fraud on the USPTO, SAC ¶¶ 74-78. Defendant filed the present motion to dismiss Counts II, IV, V, and VI on November 19, 2019. D.E. 37.[3]

### III.  STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no

---

[3] Before deciding the current motion, the Court considered What A Smoke's motion for a preliminary injunction, D.E. 5, supplemental motion to amend the motion for preliminary injunction, D.E. 23, and renewed motion for a preliminary injunction, D.E. 76. The Court denied the motions without prejudice. D.E. 107.

relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols., LLC*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## IV.   ANALYSIS

### A. Trade Dress Infringement Claims[4]

Defendant moves to dismiss Plaintiff's claims for trade dress infringement, Counts II and IV, arguing that (1) "the product packaging for What A Smoke's OPTIMUM vaping device line" has "never had a recognizable and consistent overall look," and (2) the SAC fails to plausibly allege the design has a secondary meaning. Def's Br. 16, 21.

"'Trade dress' refers to the design or packaging of a product which serves to identify the product's source." *Shire U.S. Inc. v. Barr Lab'ys, Inc.*, 329 F.3d 348, 353 (3d Cir. 2003). It "includes not only a product's packaging but also its design, such as its size, shape, and color." *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. 19-3010, 2020 U.S. App. LEXIS 31926, *6 (3d Cir. Oct. 8, 2020). "The purpose of trade dress protection, like trademark protection, is to 'secure the owner of the [trade dress] the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.'" *Shire U.S.*, 329 F.3d at 353 (alteration in original) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)).

---

[4] Count II alleges trade dress infringement under the Lanham Act, 15 U.S.C. § 1125, and Count IV alleges trade dress infringement under N.J. Stat. Ann. § 56:3-13a *et seq.* New Jersey law provides that its purpose is "to provide a system of State trademark registration and protection substantially consistent with the federal system of trademark registration and protection under the [Lanham Act]," and that "[t]he interpretation and construction of the [Lanham Act] shall be examined as persuasive authority for the interpretation and construction of this 1995 amendatory and supplementary act." N.J. Stat. Ann. § 56:3-13a. The Court therefore analyzes these Counts together.

7

Typically, to prevail on a trade dress infringement claim under the Lanham Act, a plaintiff must show that "(1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 551 F.3d 350, 357 (3d Cir. 2007).  A plaintiff must also "'articulat[e] the specific elements which comprise its distinct dress.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014) (alteration in original) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)).  But when a "plaintiff in a trade dress action seeks protection under the Lanham Act for a series or line of products or packaging," "this three-part inquiry alone . . . is insufficient." *Rose Art Indus. v. Swanson*, 235 F.3d 165, 172 (3d Cir. 2000). In cases seeking to protect a product line, courts apply the "consistent overall look" standard "before the non-functionality/distinctiveness/likelihood of confusion test is applied." *Id.* at 172-73.  Pursuant to this standard,

> a plaintiff, seeking protection for a series or line of products, must first demonstrate that the series or line has a recognizable and consistent overall look. Only after the plaintiff has established the existence of recognizable trade dress for the line or series of products should the trial court determine whether the trade dress is distinctive, whether the trade dress is nonfunctional, and whether the defendant's use of plaintiff's trade dress is likely to cause consumer confusion.

*Id.* at 173.  The "consistent overall look" standard does not require "that the appearance of the series or line of products or packaging be identical." *Id.*  "[A] party may have trade dress rights even though there are slight variations in its package design so long as the change does not alter the distinctive characteristics and the trade dress conveys a single and continuing commercial expression." *Id.* (quoting *Rose Art Indus. v. Raymond Geddes & Co.*, 31 F. Supp. 2d 367, 373 (D.N.J. 1998)).

8

The SAC does not explicitly state whether Plaintiff seeks trade dress protection for an individual product or for a product line. But Plaintiff's allegations seem to suggest trade dress for a product line rather than an individual product. Plaintiff's trade dress allegations concern battery products, cigarette kits, batteries, chargers, and What A Smoke's "numerous other products." SAC ¶¶ 29-32. Therefore, the Court will conduct a product line inquiry.

Plaintiff has alleged the following product packaging descriptions relevant to its trade dress: its "battery products utiliz[e] a predominantly black, brown and gold color scheme packaging, with the word 'OPTIMUM' appearing horizontally within the horizontal brown portion of the packaging underneath . . . 'What A Smoke,'" SAC ¶ 29; the "packaging for its cigarette kit" is "black with a gold portion running horizontally across" and includes "its distinct black, brown and gold color scheme" along with the marks "What A Smoke" and "OPTIMUM," SAC ¶ 30; its "OPTIMUM batteries also utilize a predominantly black packaging, with gold-brownish coloring, with the word 'OPTIMUM' in a contrasting color scheme," SAC ¶ 32; and "numerous other products" use the "OPTIMUM packaging . . . with the black, brown and gold packaging and a coordinated color scheme," SAC ¶ 32. Taken together, Plaintiff's allegations define its trade dress as a black, brown, and gold color scheme that includes the word OPTIMUM.

Although the SAC describes a similar trade dress for numerous products within What A Smoke's product line, the SAC only includes a color image depicting the trade dress for a single product – its cigarette kit – which comports with the trade dress description provided by Plaintiff. SAC ¶ 9. However, Defendant contends that there is no consistent overall look to What A Smoke's packaging across the entirety of its product line. Def's Br. 21. In support of this argument, Defendant asks the Court to consider additional photos of What A Smoke products and their packaging; these photos were not included in the SAC. *Id.* at 4, 12-13.

9

In deciding a motion to dismiss, a court ordinarily considers only the factual allegations raised in the complaint, exhibits attached to the complaint, and matters of public record. However, a court may also rely on "a document integral to or explicitly relied upon in the complaint." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citation omitted); *Tanikumi v. Walt Disney Co.*, 616 Fed. App'x 515, 518 (3d Cir. 2015) ("It is well established . . . that a district court may consider items that are integral to the complaint on a motion to dismiss."). A document is integral if a "claim would not exist but-for the existence of the document." *Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

A critical element of Plaintiff's trade dress infringement claims is whether the packaging of the multitude of products in Plaintiff's product line utilize a consistent overall look. *Swanson*, 235 F.3d at 175 ("when applying the 'consistent overall look' standard . . . a trial court should consider . . . the products or packaging for which the plaintiff is seeking trade dress protection"). While the SAC describes the trade dress of its battery products, cigarette kits, batteries, chargers, and "numerous other products," SAC ¶¶ 29-32, it includes a visual depiction only of the cigarette kit. Defendant's motion to dismiss includes images of the following What A Smoke products that do not appear in the SAC: Optimum Smart Technology Mod SMATIC 70 and SMATIC 30, Def's Br. 2; Optimum Nano Smart Temperature Control Vaporizer, *id.* at 3; two different images of the Optimum Disposable Electronic Cigarette, *id.*; the contents of an Optimum Complete Regular Flavor Electronic Cigarette Kit (Rechargeable), *id.* at 5; Optimum Electronic Cigarette Starter Kit and its contents, *id.*; Optimum Storm X2 Tank, *id.* at 6; Optimum Nano Tank Replacement Coil,

*id.*; Optimum Storm Replacement Coil, *id.*; Optimum Sterling Liquid, *id.* at 7; and Optimum Master Artisan Liquid, *id.* The Court finds that these photos – depicting the "numerous" What A Smoke products Plaintiff references in the SAC – are integral to Plaintiff's trade dress allegations and therefore considers them in deciding this motion to dismiss.

A review of What A Smoke's products and their packaging demonstrates that there is no consistent overall look to the What A Smoke product line. Despite Plaintiff's allegations that its products use a similar trade dress – a black, brown, and gold color scheme that includes the word OPTIMUM – many of its products do not fit this description. For example, the Optimum Nano Smart Temperature Control Vaporizer is in a white box. *Id.* at 3, 18. Other products – including the Optimum Disposable Electronic Cigarette and the Optimum Electronic Cigarette Starter Kit – appear in packaging that is predominately red and white. *Id.* at 3, 5. Images of the Optimum Storm X2 Tank, its replacement coil, and the Optimum Nano Tank Replacement Coil also fail to utilize Plaintiff's purported signature color scheme of black, brown, and gold. *Id.* at 6.

The Court therefore finds that Plaintiff has failed to plausibly allege a consistent overall look to its product line.[5] Counts II and IV are dismissed.

---

[5] In a footnote, Defendant also challenges Plaintiff's trade dress claims for failing to adequately allege a secondary meaning to the trade dress. Specifically, Defendant argues that the SAC contains no allegations about "the amount of sales, or amount or types of advertising of the alleged trade dress." Def's Br. 21. The Third Circuit has provided the following non-exhaustive list of factors to consider when evaluating secondary meaning: (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion. Defendant appears to only raise an argument pertinent to the first factor. However, the Court does not reach this contention because it finds Plaintiff's failure to meet the "overall consistent look" standard to be dispositive.

### B. Unjust Enrichment

Defendant moves to dismiss Count V for unjust enrichment, arguing that Plaintiff has provided only "bare-bones and conclusory allegations" to support this claim. Def's Br. 26.

"To state a claim for unjust enrichment, a plaintiff must allege '(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable.'" *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009), *aff'd*, 374 Fed. App'x. 341 (3d Cir. 2010) (quoting *Wanaque Borough Sewerage Auth. v. Township of West Milford*, 677 A.2d 747, 753 (1996) (quoting another source)). "Since a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, this element has been interpreted by New Jersey courts as a requirement that 'the plaintiff allege a sufficiently direct relationship with the defendant to support the claim.'" *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (quoting *Nelson v. Xacta 3000 Inc.*, 2009 WL 4119176, at *3 (D.N.J. Nov. 24, 2009)).

The SAC lacks sufficient factual allegations to adequately support a claim for unjust enrichment. Count V is dismissed.[6]

### C. Fraud on the USPTO – Count VI

Defendant moves to dismiss Count VI for fraud on the USPTO, asserting that 15 U.S.C. § 1120 applies only to fraud claims as to existing registrations, rather than pending applications. Def's Br. 21-22.

---

[6] Plaintiff's opposition brief discusses "the limited discovery" that was conducted in this case in an effort to support the unjust enrichment claim. Pl's Opp'n 17. Such evidence is not appropriately considered on a motion to dismiss.

The Lanham Act provides in pertinent part that "[a]ny person who shall procure registration in the [USPTO] of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."  15 U.S.C. § 1120.  This provision applies only to marks that have been obtained; it does not pertain to trademark applications that have not been registered.  *See Fenwick v. Dukhman*, No. 13-4359, 2015 U.S. Dist. LEXIS 35904, *12 (Mar. 20, 2015) (citing cases from other jurisdictions).  Federal courts have interpreted the plain meaning of "any person who shall procure registration" to mean "any person who has *obtained*, rather than simply *applied for*, registration of a mark." *Dunn Comput. Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 831 (E.D. Va. 2001); *Country Mut. Ins. v. Am. Farm Bureau Fed'n*, 876 F.2d 599, 601 (7th Cir. 1989) (finding that Section 38 "makes sense when 'procure' is taken to mean 'obtain' and little sense when taken to mean 'apply for'"); *Tiny Tot Sports, Inc. v. Sporty Baby LLC*, No. 04-4487, 2005 U.S. Dist. LEXIS 18137, *15 (S.D.N.Y. Aug. 24, 2005) (explaining that "to 'procure' registration means to obtain registration, not merely to apply for registration"); *Gaudreau v. Am. Promotional Events, Inc.*, 511 F. Supp. 2d 152, 160 (D.D.C. 2007) (emphasizing that "it is nonetheless clear that trademark owner must have actually *procured* a federal trademark registration in order for its deeds to be actionable in federal court under Section 38").

Plaintiff cites *Covertech Fabricating, Inc. v. TVM Bldg. Prods.*, 855 F.3d 163 (3d Cir. 2017) to support its argument that fraud on the USPTO is committed when a trademark applicant knows of others holding rights to use a mark, yet affirms that he or she "believed that no other person, firm, corporation, or association ha[d] the right to use the mark" in its trademark registration application.  Pl's Opp'n 13.  Plaintiff is correct that such a knowing, material misrepresentation can form the basis for a fraud on the USPTO claim.  However, and importantly,

13

the defendant in *Covertech* that made the misrepresentation *actually obtained* registration of its mark. *Covertech*, 855 F.3d at 174-75. Plaintiff cites to no case law – and the Court was unable to locate any – in which a fraud on the USPTO claim was viable when the mark at issue was never registered by the defendant.

The SAC makes clear that Duracell has filed trademark applications for OPTIMUM and DURACELL OPTIMUM. But the SAC makes equally clear that the applications were not granted. SAC ¶ 15-16. Because Duracell did not obtain registration for its marks, Plaintiff has failed to state a claim. Count VI is dismissed.[7]

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**. D.E. 37. Counts II, IV, V, and VI are **dismissed without prejudice** and Plaintiff has thirty (30) days to file an amended complaint that cures the deficiencies noted herein. An appropriate Order accompanies this Opinion.

Dated: October 30, 2020

                                                                                                   _____
John Michael Vazquez, U.S.D.J.

---

[7] In light of the foregoing analysis, the Court does not reach the additional arguments raised by Defendant.