<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WHAT A SMOKE, LLC,** | **Civil Action No. 19-16657 (JXN) (JSA)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **DURACELL U.S. OPERATIONS, INC.,** | |
| **Defendant.** | |

<u>**ALLEN, U.S.M.J.**</u>

Before the Court are several outstanding discovery disputes between Plaintiff What A Smoke, LLC ("Plaintiff") and Defendant Duracell U.S. Operations, Inc. ("Defendant"), as detailed in the parties' joint letters of October 12, 2021, October 22, 2021, November 12, 2021, and December 22, 2021, respectively.  (ECF Nos. 135, 137,[1] 140 & 147).  The Court did not hear oral argument, pursuant to Fed. R. Civ. P. 78.

## I.  RELEVANT BACKGROUND

As detailed in its Third Amended Complaint ("TAC"), Plaintiff brings this trademark infringement and unfair competition action against Defendant, in connection with Plaintiff's alleged rights to its OPTIMUM trademark regarding "power sources, namely, batteries, battery chargers and AC power adapters for electronic cigarettes . . . ."  (ECF No. 114, TAC ¶ 10).  Plaintiff alleges that Defendant, with "actual knowledge of Plaintiff's registered Optimum trademarks,"

---

[1] A review of the docket confirms that the parties filed their joint letter of October 22, 2021 under seal, with a corresponding motion to seal, pursuant to Local Civil Rule 5.3(c), (ECF No. 138), which the Court granted.  (ECF No. 139).  Thereafter, the parties filed a redacted version of the October 22, 2021 letter on the public docket, as Docket Entry No. 141.

filed its intent to "use [USPTO trademark] applications for Optimum and Duracell Optimum." (*Id.* ¶¶ 17, 18). Plaintiff continues that Defendant's trademark applications were rejected by the U.S. Patent and Trademark Office ("USPTO"). (*Id.* ¶ 19). According to Plaintiff, following that rejection, Defendant "proposed a concurrent use agreement with Plaintiff," which Plaintiff rejected. (*Id.* ¶ 21). Nonetheless, Defendant allegedly launched its product for batteries with the "Duracell brand name associated with the word Optimum for batteries." (*Id.* ¶ 22). Plaintiff further alleges that since July 2019, Defendant "has been marketing, advertising and selling millions of batteries using the name Optimum and Duracell Optimum, which is identical to Plaintiff's []Trademark, without permission from Plaintiff, in violation of Plaintiff's trademark and other rights." (*Id.* ¶ 24).

Plaintiff asserts trademark infringement and unfair competition claims under the Lanham Act (Counts I & II), as well as an unfair competition claim under New Jersey law (Count III), seeking damages, injunctive relief, costs, and interest. (*Id.* ¶¶ 27-40). Defendant filed its Answer to the TAC and asserted Counterclaims for cancellation of Plaintiff's Optimum and Optimum Orbis design mark and trademark registrations based on (i) fraud on the USPTO pursuant to 15 U.S.C. §§ 1119-20, (ii) abandonment pursuant to 15 U.S.C §§ 1119, 1127, and (iii) invalid assignment in gross pursuant to 15 U.S.C. §§ 1060, 1119. (ECF No. 115).

This case was reassigned to the Undersigned on February 19, 2021. A review of the docket reveals that, beginning in January 2021, the parties engaged in extensive fact discovery.[2]

Thereafter, during a Telephone Status Conference held on June 22, 2021, the parties advised the Court that they were unable to resolve a dispute about the sufficiency of Defendant's production of financial and sales information. Despite the Court's directives to meet and confer

---

[2] Based on a review of the docket, it appears the parties had also previously engaged in limited discovery during the preliminary injunction stage of the case. (*See* ECF No. 119).

on more than one occasion, the parties remained unable to resolve this dispute on their own.  (ECF Nos. 128, 131, 132 & 133).

The Court pauses to note that following the June Conference, the parties continued to raise several other discovery disputes.  Specifically, after a Settlement Conference held on August 25, 2021, the parties noted a range of new discovery disputes regarding depositions of corporate designees, scheduling non-party witness depositions, and the sufficiency of Plaintiff's document production.  The Court ordered Plaintiff to serve a 30(b)(6) deposition notice for corporate designees regarding Defendant's financial and marketing information and/or records.  To the extent Plaintiff sought additional information or documents following the depositions, the parties were directed to have a meet and confer to discuss same.  (ECF No. 134).  The Court further ordered, among other things, Plaintiff to produce supplemental responses and/or documents regarding Plaintiff's premarket tobacco product application ("PMTA") application before the U.S. Food and Drug Administration ("FDA").  (*Id.*).  The Court extended the discovery deadlines and directed the parties to file a joint letter, setting forth the status of completing fact discovery by the new October 29, 2021 deadline.  (*Id.*).

In their joint status letter filed on October 13, 2021, the parties detailed several unresolved disputes and new disputes ("October 13th Submission").  (ECF No. 135).  Specifically, Plaintiff sought various categories of Defendant's financial information, but the parties disagreed about whether such a discovery request should be held in abeyance pending the outcome of the related Rule 30(b)(6) deposition of Defendant's corporate designees.  (*Id.* at 1-2).  Plaintiff further sought "all emails not on Defendant's privilege log concerning the decision to launch Duracell Optimum batteries."  (*Id.* at 4).  Defendant countered that Plaintiff's request was procedurally and substantively without merit.  (*Id.* at 1).  The parties also signaled that, subject to additional

discussions, a dispute may arise surrounding (i) Plaintiff's responses to Defendant's second set of interrogatories and document request, (ii) Defendant's objection to Plaintiff's designation of its PMTA filing as Attorneys' Eyes Only ("AEO"), and (iii) Defendant's request for additional PMTA-related documents from Plaintiff.  (*Id.* at 2).

On October 15, 2021, the Court held a Telephone Status Conference to address these additional disputes.  (*See* ECF No. 136).  As it became clear that the parties had not engaged in a meaningful meet and confer to resolve each of these new disputes, the Court ordered the parties to do so.  (*Id.*).  The Court further ordered that if the parties were unable to resolve the dispute over production of Defendant's documents related to its financial projections, they were to submit a joint letter by October 22, 2021, outlining their respective positions with supporting legal authority.  (*Id.*).  As to the other potential discovery disputes, the parties were ordered to exchange letters by dates certain and to subsequently file a joint letter on or before November 12, 2021, addressing any unresolved disputes.  (*Id.*).  The Court extended the deadlines for the completion of fact discovery until December 15, 2021 *for the limited purpose of completing all outstanding discovery* and for the completion of expert discovery until April 15, 2022.  (*Id.*).

As discussed in detail below, and in their joint submissions of October 22, 2021, November 12, and December 22, 2021, the parties were unable to resolve nearly all of their disputes and continued to raise new discovery disputes.  (*See* ECF No. 137, 140 & 147)).

## II.   UNRESOLVED DISCOVERY DISPUTES

### A.   Defendant's Sales Projection Information

In the joint submission of October 22, 2021 ("October 22nd Submission"), the parties detail, their respective positions related to Plaintiff's document request seeking "'[a]ll documents demonstrating the projected profit or loss of Duracell Optimum batteries from the inception of

Project Turbine to the present,'" (ECF No. 137 at 3 [quoting Pl.'s RFP No. 14]), as well as the corresponding request for Rule 30(b)(6) testimony about this topic ("Defendant's Sales Projection Information"). (*Id.*). Plaintiff contends that such information is relevant to the issue of damages and/or a license royalty even if such information is only possibly relevant to the general subject matter of the case. (*Id.* at 1-3).

Defendant objects to the document request and deposition of a 30(b)(6) witness to testify about this same topic on the basis that Sales Projection Information is not relevant to Plaintiff's claims or any damages award. (*Id.* at 3-4). According to Defendant, in the TAC, Plaintiff requests Defendant's profits, but now in discovery improperly seeks Defendant's profit projections. (*Id.*). Defendant submits that the only discoverable information relevant to any award of profits, which must be based on principles of equity, are Defendant's previously produced sales and other related financial records regarding Duracell Optimum. (*Id.*). Defendant alternatively argues that even if its Sales Projection Information could be deemed relevant, Plaintiff's document requests are overbroad and unduly burdensome. (*Id.* at 5). Plaintiff counters that Defendant has waived its right to object to Plaintiff's document request, arguing that Defendant previously produced financial projections. (*Id.* at 2).

### B.    Other Discovery Disputes: November 12th Submission

In their joint submission of November 12, 2021 ("November 12th Submission"), the parties outline their respective positions regarding the ongoing dispute surrounding Defendant's objection to Plaintiff's AEO designation of its PMTA filing and the FDA's response (collectively "PMTA Documents") and raise other discovery disputes. (ECF No. 140). Defendant contends that Plaintiff's supplemental answers and document production to Defendant's second set of interrogatories and document requests are deficient. (*Id.* at 2-3). In turn, Plaintiff contends that

Defendant has not produced financial documents previously sought in Plaintiff's discovery requests and in connection with the Rule 30(b)(6) deposition of Joe Saviano ("Financial Documents"). (*Id.* at 5-6). Plaintiff also raises for the first time that Defendant has improperly withheld relevant, non-privileged internal electronic communications ("ESI Documents") in response to Request Nos. 10-13 and 23-24 of Plaintiff's document requests served on March 5, 2021 ("March 2021 Requests"),[3] and that Defendant has served an improper Rule 30(b)(6) notice for the deposition of Mark Anton. (*Id.* at 4-6).

### C.   Other Discovery Disputes: December 22nd Submission

In their December 22, 2022 submission ("December 22nd Submission"), the parties detail yet another discovery dispute. Plaintiff contends that, on November 24, 2021, it served a 30(b)(6) deposition notice regarding customer complaints and reviews concerning Duracell Optimum batteries and served a request to produce related documents; however, Defendant has improperly refused to produce a corporate designee or the related documents. (ECF No. 147 at 1-3). Defendant counters that the discovery requests are untimely and the information sought has been known to Plaintiff for a long time.

The Court addresses each of these unresolved disputes in turn.

### III.   ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) governs the general scope of discovery. The rule provides, in relevant part, as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

---

[3] On November 19, 2021, Plaintiff filed a letter supplementing the November 12th Submission by adding an "Exhibit J," which is a copy of its March 2021 Requests and Defendant's responses thereto. (*See* ECF No. 144).

expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The Court maintains broad discretion to resolve issues pertaining to the scope of discovery under Rule 26.  *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987); *see also Farmers & Mrchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.*, 174 F.R.D. 572, 585 (D.N.J. 1997).  However, the Court recognizes that "the scope of discovery is not without limits." *Robbins v. Camden City Board of Educ.*, 105 F.R.D. 49, 55 (D.N.J.1985).  Accordingly, "[d]iscovery should be tailored to the issues involved in the particular case." *Id.*

"'The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence.'"  *EEOC v. Princeton Healthcare System*, Civ. No. 10-4126, 2012 WL 1623870, at *19 (D.N.J. May 9, 2012) (quoting *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000)).  Yet, consistent with the standards set forth in Rule 26(b)(2), "'the party resisting discovery has the burden of clarifying and explaining its objections to provide support thereof.'"  *Id.* (quoting *Tele-Radio Sys. Ltd. v. DeForest Elects., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)).

In resolving discovery disputes, the Court must consider the rule of proportionality, which "'guard[s] against redundant or disproportionate discovery,'" and thus affords the Court "'authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry.'"  *Takacs v. Union Cty.,* Civ. No. 08-711, 2009 WL 3048471, at *1 (D.N.J. Sept. 23, 2009) (quoting *Bowers v. National Collegiate Athletic Assoc.*, Civ. No. 97-2600, 2008 WL 1757929, at *4 (D.N.J. Feb. 27, 2008)).

### A.       Relevance of Defendant's Sales Projection Information

The parties' dispute turns on the relevance of documents and related Rule 30(b)(6) testimony sought by Plaintiff concerning Defendant's Sales Projection Information, *i.e.*, "the projected profit or loss of Duracell Optimum batteries from the inception of Project Turbine to the present." (ECF No. 137). For the reasons set forth below, the Court finds that the requested information is not relevant, and thus, Plaintiff's request is denied.

Plaintiff primarily argues that the requested information is "highly relevant" to the issue of damages as it pertains to the equitable remedy of disgorgement of an alleged infringer's profits. (*Id.* at 1-2). Plaintiff is mistaken. In assessing Defendant's profits, Plaintiff "shall be required to prove defendant's sales only," and in turn, Defendant "must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Consistent with the plain meaning of Section 1117(a), courts have repeatedly held that when it comes to disgorgement of an alleged infringer's profits, the plaintiff is limited to recover the defendant's *actual* profits. *See Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005) (adopting a factor-based approach "in evaluating whether equity supports disgorging the infringer's profits," including analyzing "whether sales have been diverted"); *Caesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274 (3d Cir. 1975) ("'[D]amages' means an award based on either actual damages to the plaintiff or *actual* profits of the infringer, measurable in dollars and cents."). Accordingly, here, documents or testimony concerning Defendant's projected sales or profit are wholly irrelevant in determining the amount of Defendant's profits tied to the alleged infringing conduct.

Plaintiff's alternative argument that the requested information is relevant to show entitlement to "a reasonable royalty, as well as lost profits and damages," (ECF No. 137 at 2), fares no better. Defendant correctly argues that, as alleged in the TAC (ECF No. 114), Plaintiff seeks

*only* Defendant's profits.  (ECF No. 137 at 3).[4]  The TAC makes no mention of "royalties" or Plaintiff's own "lost profits."  (*See generally* TAC; *see also* TAC ¶ 31 and "Wherefore" clause contained therein).  Accordingly, even if Defendant's projected profits were somehow relevant to account for royalties or Plaintiff's own lost profits, Plaintiff's failure to request any such relief in the TAC further demonstrates the irrelevancy of Defendant's Sales Projection Information to the claims, defenses, and relief sought in this case.[5]

Based on the foregoing, the Court finds that Plaintiff has not met its burden of showing that Defendant's Sales Projection Information is relevant to Plaintiff's claims or the subject matter of the action.  Accordingly, Plaintiff's request for this information is **DENIED**.

## B.    Sufficiency of Plaintiff's Supplemental Discovery Responses

Defendant takes issue with Plaintiff's supplemental answers to Interrogatory Nos. 6 and 7 of Defendant's second set of interrogatories and Document Requests Nos. 16 and 17 of Defendant's second set of requests for the production of documents.  (ECF No. 140 at 2).  Plaintiff has not objected to the substance of these discovery requests beyond a passing statement that Defendant continues to waste time pursuing a "'staged photo' theory."  (*Id.* at 3).  To that end, Plaintiff has neither contested the relevance of the information and documents sought, nor raised any claim of prejudice or undue burden.  (*Id.* at 2-3).  Rather, the present dispute involves the sufficiency and propriety of Plaintiff's supplemental answers and document production.  As an

---

[4] Plaintiff further argues that Defendant has waived its relevance objection because it already produced a document that includes Defendant's financial projections.  (ECF No. 137 at 2).  Defendant counters that the referenced document was previously produced in response to a different document request that does not expressly seek projection data.  (*Id.* at 5, n. 6).  As the Court denies Plaintiff's instant request to compel on relevancy grounds, the Court declines to reach the issue of waiver.  Even if this Court were to reach the issue, a party's production of responsive information to one document request does not result in a blanket waiver in response to a wholly separate document request.

[5] As the Court denies Plaintiff's request for Defendant's Sales Projection Information on the basis of relevancy, the Court does not reach Defendant's alternative argument that the specific document requests at issue are overbroad and unduly burdensome.  (ECF No. 137 at 5).

aside, the Court notes that Plaintiff states that to the extent it has not produced any responsive information and documents, they have been withheld based on privilege. (*Id.* at 2).

        1.    <u>Interrogatory No. 6</u>

Interrogatory No. 6 seeks in relevant part:

> Describe with particularity all communications between Plaintiff or Gearhart Law and [anyone] [] . . . of a Firehouse vape store . . . regarding the photograph of a Firehouse vape store display case . . ., including, but not limited to, and separately for each such communication: (i) the identities and last known contact information of all individuals involved in the communication; (ii) whether the communication was written or oral; (iii) the date and time of the communication; and (iv) if written, identify all documents constituting, referring or relating to the communication.

(*Id.* at Exh. C). Defendant contends that, in its supplemental answer, Plaintiff acknowledges there were "'communications'" with Mr. Moran regarding the photograph, but that Plaintiff did not provide the particular information requested in the Interrogatory subparts as part of its supplemental response. (*Id.*). Rather, in its answer, Plaintiff merely references the deposition of Mr. Moran as responsive and notes that Plaintiff's investigation continues. (*Id.*).

"The general rule is that answers to interrogatories should be complete in and of themselves, and should not refer to pleadings, depositions, or other documents." *DiPietro v. Jefferson Bank*, 144 F.R.D. 279, 282 (E.D. Pa. 1992) (internal citation omitted). "Courts have held that even reference to sworn deposition testimony is an insufficient response to an interrogatory." *Id.* (citing *Smith v. Logansport Community School Corp*, 139 F.R.D. 637, 650 (N.D. Ind. 1991)). This Court agrees.

Accordingly, the Court finds Plaintiff's answer to Interrogatory No. 6 is deficient. Thus, Defendant's request for a more specific answer to Interrogatory No. 6 is **GRANTED**. The Court will order Plaintiff to provide a full and complete narrative response to all parts of Interrogatory No. 6 and attach copies of any documents that support its answer on or before May 13, 2022.

2.      Interrogatory No. 7

Similarly, Interrogatory No. 7 asks Plaintiff to "'[d]escribe with particularity the circumstances surrounding the Photograph,'" as specified in the nine discrete subparts. (*Id.* at Exh. C). For example, subpart (i) seeks information about who instructed Mr. Moran to take the photograph; subpart (iii) seeks the identity and contact information of the individuals who requested and/or instructed that the photograph be taken; while subpart (vii) seeks information about who has knowledge about receiving the photograph. (*Id.*). Defendant continues that Plaintiff's answer to this interrogatory was essentially "'I don't know,'" and thus is evasive and not credible. (*Id.* at 2). In its interrogatory answer for subpart (i), Plaintiff responds that there are no requests or instructions. (*Id.* at Exh. C). In response to subparts (ii)-(ix), Plaintiff states that it does not have information responsive beyond perhaps the address of Mr. Moran and his store. (*Id.*). Yet, Plaintiff again references the deposition of Mr. Moran as being responsive. (*Id.*). Finally, as to subpart (ix), Plaintiff claims to be unaware of the photograph's current location. (*Id.*).

As to subpart (i), Plaintiff has asserted that neither it nor its counsel made any specific requests or gave instructions to third persons in connection with the arrangement, display and taking of the photograph.  While Defendant may refute this assertion, this Court finds that Plaintiff has provided a verified answer to this subpart and need not further supplement its response. Accordingly, Defendant's request for a more specific answer to subpart (i) of Interrogatory No. 7 is **DENIED**.

With respect to its answers to subparts (ii)-(ix), Plaintiff has provided verified answers that it does not have information responsive beyond the address of Mr. Moran and his store.  To that end, Plaintiff is directed to provide either the addresses of Mr. Moran and his store or a certification that Plaintiff does not possess this information on or before May 13, 2022.  However, for the

11

balance of the information sought in subparts (ii)-(ix), the Court finds that Plaintiff cannot be compelled to produce information or documents that Plaintiff has verified it does not possess or is otherwise not in its custody or control. *See High 5 Games, LLC v. Marks*, Civ. No. 13-07161, 2019 WL 4597568, at *2 (D.N.J. Sept. 23, 2019); *see also Bumgarner v. Hart*, Civ. No. 05-3900, 2007 WL 38700, at *5 (D.N.J. Jan. 4, 2007). Accordingly, the Court finds the balance of Plaintiff's verified answers to subparts (ii)-(ix) are sufficient, and thus, except as otherwise directed herein, Defendant's request for a more specific answer to those subparts is **DENIED**.

3.    Document Requests Nos. 16 and 17

Defendant states that Document Requests Nos. 16 and 17 clearly seek all documents relating to the aforementioned photograph, which includes transmittals. (*Id.* at 2).

Document Request No. 16 seeks "[a]ll documents constituting, referring or relating to the photograph . . . ." (*Id.* at Exh. C). In its answer, Plaintiff states that there are no non-privileged documents except those previously disclosed. (*Id.*). Defendant contends that this answer is evasive and, other than the photograph itself, Plaintiff has not previously produced any other documents. (*Id.* at 2). Although Plaintiff claims to have previously produced all non-privileged documents, Defendant argues otherwise. (*Id.* at 2-3).

In turn, Document Request No. 17 seeks "all documents constituting, referring or relating to communications between Plaintiff or Gearhart Law and [anyone] [ ] of Firehouse vape store . . . regarding the Photograph . . . ." (*Id.* at Exh. C). In its answer, Plaintiff claims to be unaware of the identities of either the owners, employees, or representatives of Firehouse vape store or any documents regarding the photograph "except as disclosed during Mike Moran's deposition." (*Id.*). According to Defendant, Plaintiff's response is evasive and incorrect since neither Plaintiff nor Mr. Moran previously produced any documents. (*Id.* at 2).

Consistent with this Court's prior rulings herein, Plaintiff again improperly refers to deposition transcripts. This answer is not sufficient. *See DiPietro*, 144 F.R.D. at 282. Accordingly, in response to Defendant's Interrogatory Nos. 6 and 7 and Defendant's Requests for Documents Nos. 16 and 17, on or before May 20, 2022, Plaintiff shall: (a) produce all responsive, non-privileged documents if not previously produced; (b) provide, if previously produced, the date of the prior production, including the bates stamped reference and provide a signed certification that no further documents exist or are in Plaintiff's possession; and/or (c) provide a privilege log in compliance with Fed. R. Civ. P. 26, if any documents are withheld on the basis of privilege.

### C.      The PMTA Documents' AEO Designation

Defendant challenges Plaintiff's AEO designation of the PMTA Documents under the "Stipulated Confidentiality Agreement and Protective Order" ("Protective Order"). (*See* ECF No. 140 at 3). Defendant argues that (i) Plaintiff's AEO designation is void by operation of paragraph 8(a) of the Protective Order because Plaintiff failed to timely respond to Defendant's objection, and (ii) that, in any event, Plaintiff has failed to meet its burden of showing that the PMTA Documents were appropriately designated under the Protective Order. (*Id.*). In turn, Plaintiff argues that the designation is appropriate because the PMTA documents are "trade secrets" and the parties are competitors.[6] (*Id.* at 4). For the reasons set forth below, the Court strikes the AEO designation of the PMTA Documents and replaces it with a "Confidential" designation under the Protective Order.

---

[6] Plaintiff also appears to contend that Defendant has waived its ability to object to the AEO designation because Defendant did not object to the filing of an exhibit on the court's docket containing PMTA Documents under seal. (*See* ECF No. 140 at 4). Plaintiff's contention is unavailing. Based on this Court's review of Defendant's prior submission, it is clear that Defendant expressly reserved its right to object to the sealing of the PMTA Documents in the future. (*See id.*; *see also* ECF No. 138-1 ¶ 6). In any event, at this juncture, Defendant does not object to the sealing of PMTA Documents on the Court's docket, pursuant to Local Civil Rule 5.3(c), but rather their treatment as AEO instead of "Confidential" discovery material, pursuant to Local Civil Rules 5.3(b) and 37.1(a).

1.     Protective Order's Procedural Requirements

The Protective Order provides, in relevant part, that when a dispute arises over a document's designation, the objecting party must serve a written objection on the designating party, "describ[ing] with particularity the documents or information in question" and "stat[ing] the grounds for objection." (ECF No. 28 ¶ 8(a)).  Thereafter, the designating party must respond in writing within fourteen (14) days of the initial written objection, "stat[ing] with particularity the grounds for asserting that the document or information is Confidential or [AEO]." (*Id.*).  If the designating party fails to timely respond in writing, "the challenged designation will be deemed to be void." (*Id.*).  However, if the designating party timely responds to the written objection, the parties "shall then confer in good faith in an effort to resolve the dispute." (*Id.*).  If the dispute remains unresolved, "the proponent of the designation being challenged shall present the dispute to the Court initially by telephone or letter . . . ." (*Id.* ¶ 8(b)).

Based on the sparce record presented by the parties, the Court is unable to determine whether Plaintiff met its obligation of timely responding to Defendant's initial written objection of September 23, 2021. (*See* ECF No. 140, Exh. E).  Nonetheless, the limited record confirms that Plaintiff failed to present this dispute to the Court as required by paragraph 8(b) of the Protective Order.  In the October 13th Submission, Plaintiff did not identify this dispute as an "issue." (ECF No. 135 at 4).  Rather, Plaintiff did not advise the Court about its refusal to remove the AEO designation until the November 12th Submission. (*See id.*).  Defendant—not Plaintiff—brought this dispute to the Court's attention, (*see id.* at 2), and thus this Court finds that Plaintiff did not comply with paragraph 8(b) of the Protective Order.

Nonetheless, the Court further finds that Plaintiff's noncompliance does not automatically void the AEO designation, pursuant to the terms of the Protective Order.  As such, the Court considers the appropriateness of the AEO designation on the merits.

2.      Protective Order's Substantive Requirements

Plaintiff bears the burden of showing that the AEO designation is appropriate.  *In re Valsartan N-Nitrosodimethylamine (NDMA), Losartan, & Irbesartan Prod. Liab. Litig.*, 512 F. Supp. 3d 546, 550 (D.N.J. 2021) [hereinafter "*In re Valsartan*"] (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122 (3d Cir.1986)).  To do so, it must show that the PMTA Documents "contain[] highly sensitive business or personal information, [and] the disclosure of which is highly likely to cause significant harm to an individual or to the business or competitive position of the designating party."  (ECF No. 28 ¶ 2 (Definition of "Attorneys' Eyes Only")).  "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning' are not sufficient," and the harm "'must be significant, not a mere trifle.'"  *In re Valsartan*, 512 F. Supp. 3d at 550 (*Cipollone*, 785 F.2d at 1122).  For the reasons set forth below, Plaintiff has failed to carry its burden.

As to the first requirement, Plaintiff asserts, in a conclusory fashion, that the PMTA Documents contain "trade secrets."  (*See* ECF No. 140 at 3-4).  This broad assertion is insufficient to meet Plaintiff's burden.  *See In re Valsartan*, 512 F. Supp. 3d at 550 (citing *Deford v. Schmid Prod. Co., a Div. of Schmid Labs.*, 120 F.R.D. 648, 653 (D. Md. 1987)).  "Where a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position.  That showing requires specific demonstrations of fact supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm."  *Id.*  Here, Plaintiff has not offered anything other than a conclusory

assertion and, as represented by Defendant's counsel, a concession that "much of the information in the [PMTA Documents] was publicly available information."  (ECF No. 140, Exh. E).

Having reviewed the application and the FDA's "refusal" letter, (ECF No. 93 & ECF No. 137, Exh. F), the Court notes that while some information in Plaintiff's premarket tobacco product application does not appear to be "highly sensitive business or personal information," other information could conceivably be considered as such.[7]  In any event, that fact alone does not warrant the AEO designation rather than the "Confidential" designation under the express terms of the Protective Order.  (ECF No. 28 ¶ 1).  Plaintiff must still satisfy the second requirement–*i.e.*, "the disclosure of which is highly likely to cause significant harm to an individual or to the business or competitive position of the designating party."  (*Id.* ¶¶ 2, 7).  Plaintiff merely argues that the parties are competitors and significant overlap related to online advertising.  (ECF No. 140 at 4).  This conclusory statement falls woefully short of demonstrating any such particularized harm.  *See In re Valsartan*, 512 F. Supp. 3d at 555 (finding that designating party "does not supply a single particularized example that any serious or substantial harm will result.").  "General allegations of injury to reputation and client relationships or embarrassment that may result . . . is insufficient to justify judicial endorsement of an umbrella confidentiality agreement."  *Id.* at 554 (quoting *Barnes Found. Twp. of Lower Merion*, C.A. No. 96-372, 1996 WL 729885, at *3 (E.D. Pa. Dec. 6, 1996)).  In any event, Plaintiff's unsupported risk of substantial harm is further diminished by the express terms of the Protective Order.  (*See* ECF No. 28 ¶¶ 3 & 4).

For all of the foregoing reasons, the Court orders that the AEO designation of the PMTA Documents be stricken and replaced with a "Confidential" designation under the Protective Order.

---

[7] In light of the parties' failure to identify the whole universe of PMTA Documents at issue in this dispute, the Court's review has been limited to those documents contained in ECF No. 93 and ECF No. 137 at Exh. F.

D.     **Defendant's ESI Documents**

In the October 13th Submission, Plaintiff identified a narrow dispute over its request for "all emails not on Defendant's privilege log concerning the decision to launch Duracell Optimum batteries" ("Launch ESI Documents").  (ECF No. 135 at 4).  In doing so, however, Plaintiff failed to identify the specific document requests that seek such information.  (*See id.*).  Notably, in the November 12th Submission, Plaintiff acknowledges that Defendant produced some internal electronic communications, but then expands the scope of the dispute by stating that Defendant had not produced the entire universe of non-privileged ESI Documents in response to Request Nos. 10-13 and 23-24 of the March 2021 Requests.  (ECF Nos. 140 at 4-5 & 144 at Exh. J).

As a preliminary matter, the Court notes that none of these specific document requests explicitly seek "electronic communications" and, arguably, they do not even seek the Launch ESI Documents that Plaintiff identified in the October 13th Submission.  (*See* ECF No. 144 at Exh. J). Even liberally construing these requests as seeking the Launch ESI Documents, Defendant has represented that it previously produced "the non-privileged emails concerning the conception, selection and adoption of the Optimum trademark," in connection with the limited discovery that was conducted in advance of the Court's consideration of Plaintiff's preliminary injunction motion.  (ECF No. 140 at 5).  Whether the Honorable Joseph A. Dickson (Ret.) ruled that no further ESI must be produced by Defendant is unclear as there is no court order on the docket memorializing same.  However, this is of no moment because this Court finds that Plaintiff has not met its burden of demonstrating that Defendant has not produced all non-privileged, responsive ESI related to Defendant's decision to launch the Optimum batteries.  Plaintiff's blanket assertions to the contrary are not sufficient to refute Defendant's representations about its prior production.

Accordingly, Plaintiff's request to compel the production of any additional Launch ESI Documents is **DENIED**.

Finally, this Court finds that Plaintiff's lack of expediency in raising the dispute over Defendant's alleged failure to produce all ESI Documents in response to Request Nos. 10-13 and 23-24 of the March 2021 Requests ("Requests") warrants denial of Plaintiff's request to compel a supplemental production. In the October 13th Submission, Plaintiff merely stated that it sought "all emails not on Defendant's privilege log *concerning the decision to launch Duracell Optimum batteries*." (ECF No. 135 at 4 [emphasis added]). There was no mention of Plaintiff challenging the sufficiency of Defendant's responses to the Requests. Plaintiff did not raise this dispute until the November 12th Submission.[8] Significantly, in its October 15, 2021 Order, the Court extended the deadline for the completion of fact discovery from October 29, 2021 to December 15, 2021 *for the limited purpose of completing all outstanding discovery*. (ECF No. 136). The Court's Order was not an invitation to raise new discovery disputes in perpetuity. Thus, Plaintiff's expansion of the dispute over the production of ESI Documents in response to the Requests falls squarely outside the fact discovery period.[9]

Accordingly, Plaintiff's request to compel any supplemental production of all of Defendant's ESI Documents in response to Request Nos. 10-13 and 23-24 of the March 2021 Requests is **DENIED**.

---

[8] In the November 12th Submission, Plaintiff's counsel attempts to shift the blame for their failure to provide defense counsel with Plaintiff's opening letter by October 29, 2021, by stating that a staff paralegal did not docket the October 29th court ordered deadline. (ECF No. 140 at 1). This excuse, even if true, does not properly explain Plaintiff's counsel's failure to raise the dispute over Defendant's alleged failure to produce additional ESI Documents until November 12, 2021.

[9] As an aside, this Court notes that Plaintiff's August 8, 2021 deficiency letter to Defendant—which Plaintiff provided to the Court for the first time, and belatedly, as an exhibit to the parties' joint letter of December 22, 2021—made no express mention of any failure by Defendant to produce ESI Documents in response to Request Nos. 10-13 and 23-24 of the March 2021 Requests. (*See* ECF No. 147 at Exh. 5).

### E.    Defendant's Financial Documents

In the November 12th Submission, Plaintiff contends that Defendant failed to produce the Financial Documents in response to Request Nos. 10-13 and 23-24 of the March 2021 Requests, based on the testimony of Defendant's Rule 30(b)(6) witness Joe Saviano.  (ECF No. 140 at 5). Without providing a copy of the deposition transcript for the Court's review, Plaintiff argues that Mr. Saviano confirmed that Defendant improperly withheld these Financial Documents.  (ECF No. 147 at 2).

Defendant counters that this dispute is untimely raised, that Plaintiff mischaracterizes Mr. Saviano's testimony, and that it has produced all of the requested records.  (ECF No. 140 at 5 & ECF No. 147 at 5).  Significantly, defense counsel notes that Plaintiff has yet to depose all of the designated Rule 30(b)(6) witnesses on the topic of Defendant's Financial Documents.  (*Id.*).  In their December 22nd Submission, defense counsel states that Defendant's Finance Director for North America, Raj Nagpal, has yet to be deposed under Rule 30(b)(6), and offers to meet and confer following Mr. Nagpal's deposition if Plaintiff has a basis to challenge the sufficiency of the production.  (ECF No. 147 at 5).

Based on the present record, the Court finds that Plaintiff has not met its burden of showing that Defendant has improperly withheld the requested documents at this time.  Thus, Plaintiff's request to compel the production of Defendant's Financial Documents is **DENIED WITHOUT PREJUDICE**.  Plaintiff is directed to conduct the remaining Rule 30(b)(6) deposition of Raj Nagpal on or before June 5, 2022.  To the extent this deposition does not resolve this dispute over the sufficiency of Defendant's Financial Documents production, the parties are directed to meet and confer in good faith.  If the parties are unable to resolve this dispute through the meet-and-confer process, Plaintiff may then submit a letter of no more than two (2) pages outlining any

dispute that remains on this topic within ten (10) days of the completion of Mr. Nagpal's Rule 30(b)(6) deposition.

### F.   30(b)(6) Deposition of Plaintiff's Corporate Designee

In the November 12th Submission, Plaintiff raises yet another new dispute, concerning Defendant's 30(b)(6) deposition notice to Plaintiff.  (*See* ECF No. 140 at 6).  Plaintiff argues that the notice is improper.  (*Id.*).  The Court disagrees.

First, Defendant need not seek leave of this Court to conduct Plaintiff's Rule 30(b)(6) deposition.  Rule 30(b)(6) states, in relevant part, as follows:

> (6) Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party *may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity* and must describe with reasonable particularity the matters for examination. *The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf*; and it may set out the matters on which each person designated will testify. . . .  The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6) (emphasis added).  Thus, in the case of a Rule 30(b)(6) deposition, the deponent is an entity, rather than an individual.  Accordingly, contrary to Plaintiff's contentions, Fed. R. Civ. P. 30(a)(2)(A)(ii) is not at issue.  To the extent Defendant may have identified Mark Anton in the deposition notice, it is ultimately Plaintiff's decision to designate one or more of its officers, directors, or managing agents, so long as they are able to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

Second, Plaintiff has failed to show that Plaintiff's Rule 30(b)(6) deposition "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or that Defendant "has had ample opportunity to obtain the information by discovery in the action."  (ECF No. 140 at 6).  The record available to the Court reflects that Defendant has not taken Plaintiff's Rule 30(b)(6) deposition and that the

July 20, 2020 fact deposition of Mark Anton was only in Mr. Anton's individual capacity and in connection with limited discovery that was conducted in connection with Plaintiff's preliminary injunction motion.  Further, Defendant notes that the 30(b)(6) deposition topics "are explicitly targeted to denials of requests for admissions that were served within just the last month and relate to events that occurred long after Mr. Anton's personal deposition."[10]  (*Id.*).

For the foregoing reasons, Plaintiff's objections to Defendant's 30(b)(6) deposition notice to Plaintiff are overruled, and Plaintiff is directed to produce one or more of its officers, directors, or managing agents for the noticed 30(b)(6) deposition on or before June 5, 2022.

### G.    30(b)(6) Deposition of Defendant's Corporate Designee

Finally, in the December 22nd Submission, Plaintiff raises a new dispute concerning Defendant's refusal to produce a witness for a 30(b)(6) deposition (and related documents) about Defendant's customer relations department and customer complaints pertaining to Duracell Optimum batteries.  (*See* ECF No. 147 at 3).  Defendant argues that Plaintiff's Rule 30(b)(6) deposition notice and request to compel the production of related documents is untimely as it fails to comply with this Court's October 15, 2021 Order.  (*Id.* at 3-5).  Defendant also submits that the proposed Rule 30(b)(6) topics about customer complaints and reviews have been known to Plaintiff since at least October 2020 when Plaintiff referenced them as part of its preliminary injunction motion.  (*Id.*).

The Court agrees.  As set forth above, the Court's extension of the deadline for the completion of fact discovery from October 29, 2021 to December 15, 2021 was for the limited purpose of completing all outstanding discovery, not an invitation to serve new discovery requests. (ECF No. 136).  Plaintiff blanketly asserts that this deposition qualifies as outstanding discovery

---

[10] While neither party has submitted the challenged deposition notice, based on Defendant's statement, it appears that the deposition notice was served prior to the fact discovery deadline of October 29, 2021, and thus, was timely noticed.

because it had previously served requests in March 2021 for "documents related to . . . customer complaints, distributor complaints, product returns and product recalls." (ECF No. 147 at 3).  Even if this Court broadly construes these previously served document requests as seeking such information, this Court finds that Plaintiff had ample opportunity to depose a 30(b)(6) witness to seek testimony on any such topics and serve supplemental discovery requests long before the expiration of the October 29, 2021 deadline.  Plaintiff failed to do so.

Accordingly, as the deposition notice and request to compel related documents were untimely served, Plaintiff's request to compel this additional discovery is **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** the parties' respective requests to compel discovery consistent with the rulings set forth herein. An appropriate form of order will be entered.

*s/ Jessica S. Allen*
**Hon. Jessica S. Allen**
**United States Magistrate Judge**

Dated:  May 6, 2022

cc:    Hon. Julien Xavier Neals, U.S.D.J.